Riley Dobi NOEL, Petitioner,

v.

Larry NORRIS, Director, Arkansas
Department of Correction,
Respondent.

No. 5:00CV00363 SWW.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

March 1, 2002.

Order Certifying Appealability
and Amending Opinion
April 16, 2002.

William A. McLean, Walter Craig Lambert, Jennifer Morris Horan, Federal Public Defender's Office, Little Rock, AR, for Petitioner.

Joseph V. Svoboda, Jeffrey A. Weber, AR Atty; Gens. Office, Little Rock, AR, for Respondent.

### MEMORANDUM OPINION AND ORDER

SUSAN WEBBER WRIGHT, Chief Judge.

Now before the Court is petitioner's amended petition for writ of habeas corpus [docket no. 30] and respondent's response [docket no. 39]. Also before the Court is

the motion of respondent to preclude petitioner from calling witnesses prior to compliance with 28 U.S.C. § 2254 [docket no. 38], petitioner's responses [docket nos. 46 & 49], and respondent's reply [docket no. 52].

Respondent contends that petitioner is not entitled to an evidentiary hearing or to call witnesses in support of his habeas corpus petition because his claims are either procedurally defaulted and petitioner has not shown compliance with 28 U.S.C. § 2254(e), or were raised in state court and petitioner has not shown compliance with 28 U.S.C. § 2254(d). Petitioner responds that a hearing is necessary on the following grounds for relief, as set forth in his habeas petition: Ground 2 (Victim Impact Evidence), Ground 3 (Change of Venue), Ground 4 (Improper and Inflammatory Testimony), Ground 5 (False Evidence and/or Argument), Ground 8 (Newly Discovered Evidence), Ground 10 (Newly Discovered Evidence), Ground 14 [1] (Cumulative Effect of Errors), and Ground 15 (Ineffective Assistance of Counsel). Petitioner states that Ground 1 (Mandatory Review of Entire Record by Arkansas Supreme Court), Ground 6 (Improper and Inflammatory Closing Arguments), Ground 7 (Statutory Scheme Unconstitutionally Vague), and Ground 9 (Improper Argument and Questioning) may be resolved on the record alone.

After careful consideration, and for the reasons stated below, the Court finds that petitioner's amended petition for writ of habeas corpus must be denied in its entirety, and respondent's motion to preclude petitioner from calling witnesses prior to compliance with 28 U.S.C. § 2254 must be granted.

## I. Background

A brief summary of the facts of this case is as follows.[2] On the evening of June 4, 1995, petitioner Riley Dobi Noel, Terry Carroll, Curtis Cochran, and Tracy Calloway went to the home of Mary Hussian in Little Rock. Present in the home that night were Mary Hussian, three of her children: Malak Hussian, age 10; Mustafa Hussian, age 12; and Marcel Young, age 17; and Marcel Young's boyfriend/fiance, Kyle Jones. Petitioner shot the three children in the head as they lay on the floor in the front room of the house. Meanwhile, Terry Carroll attempted to shoot Mary Hussian with a shotgun. The shotgun jammed, however, and Mary Hussian was able to wrestle it away from Terry Carroll. Kyle Jones escaped unharmed through a bathroom window. Much of the incident was recorded when Mary Hussian called 911. It was the state's theory of the case that petitioner committed the murders in retaliation for the death of his brother, Cornelius Gannaway, during the week prior. Petitioner apparently believed that Mary Hussian's eldest daughter, Yashica Young, with whom his brother had a child, had "set up" his brother in a drive-by shooting.

---

1. Petitioner's amended petition [docket no. 30] lists twelve grounds total, but skips numerically from Ground 10 to Ground 14. In order to avoid unnecessary confusion, the Court will not renumber petitioner's grounds; therefore, for clarity of the record, the Court notes that Grounds 11, 12, and 13 do not exist.

2. The Court takes these facts directly as reported by the Arkansas Supreme Court and from the record of this case. *See Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998);

*Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Petitioner has not directly challenged these facts, and the Court both presumes them to be correct under the applicable legal standard and knows them to be correct from its own review of the record. To the extent that petitioner might indirectly challenge individual facts as a result of his legal arguments, the Court determines that he has not rebutted by clear and convincing evidence the presumption of correctness that attaches to the state court's determination of the facts. 28 U.S.C. § 2254(e)(1).

In July, 1996, following an eleven-day trial in the Circuit Court of Pulaski County, Arkansas, petitioner was convicted of three counts of capital murder and one count of attempted capital murder. Petitioner was sentenced to death by lethal injection on the capital murder convictions and to sixty years on the attempted capital murder conviction. Petitioner appealed, and the Arkansas Supreme Court affirmed his convictions and sentence on January 15, 1998. Petitioner then pursued state post-conviction relief, which was denied. The Arkansas Supreme Court affirmed the denial of post-conviction relief on September 14, 2000. Petitioner then filed a timely petition for writ of habeas corpus with this Court.

## II. Standard of Review

28 U.S.C. § 2254 permits a prisoner in state custody to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The extent to which a federal court may actually consider a petitioner's federal claims, however, has been limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as outlined below.

## A. Federal Habeas Review of Claims Adjudicated on the Merits in State Court

A petitioner may bring a federal habeas petition to challenge a state court's application of federal law or to challenge a state court's factual findings. Despite this broad statement, a federal court's power to grant a state prisoner's application for a writ of habeas corpus on claims adjudicated on the merits in state court is in fact quite constrained. *Terry Williams v. Tay-*

lor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (concurring opinion of O'Connor, J., for the Court). Pursuant to the AEDPA, with respect to any claim adjudicated on the merits in state court, habeas relief shall not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 1. Challenging the State Court's Application of Federal Law

 28 U.S.C. § 2254(d)(1) permits a petitioner to seek relief on the ground that a state court's decision was "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court. A state court's decision will be viewed as " 'contrary to' clearly established federal law if the state court has applied a rule that directly contradicts Supreme Court precedent or has reached a result opposite to a result reached by the Supreme Court on 'materially indistinguishable' facts." *Kinder v. Bowersox,* 272 F.3d 532, 538 (8th Cir.2001) (citing *Terry Williams,* 529 U.S. at 405, 120 S.Ct. 1495 (concurring opinion of O'Connor, J., for the Court)). A state court's decision will be viewed as an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Terry Williams,* 529 U.S. at 413, 120 S.Ct. 1495 (concurring opinion of O'Connor, J., for the Court).[3] "[A] federal habeas court making

---

3. It is unclear whether an "unreasonable application" may also be one where a state court unreasonably extends or fails to extend

a legal principle from Supreme Court precedent to a new context where, respectively, it

the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable." *Id.* at 409, 120 S.Ct. 1495 (emphasis supplied). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S.Ct. 1495. Thus, a state court's application of federal law might be erroneous, in this Court's independent judgment, yet not objectively unreasonable. *Kinder,* 272 F.3d at 538.

### 2. Challenging the State Court's Factual Findings

■ 28 U.S.C. § 2254(d)(2) permits a petitioner to seek relief on the ground that, in light of the evidence before the state court, the state court made an unreasonable determination of the facts. However, the state court's findings are subject to a deferential standard of review. *Kinder,* 272 F.3d at 538. In particular, a state court's factual determinations are presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *James v. Bowersox,* 187 F.3d 866, 871 (8th Cir.1999).

### B. Federal Habeas Review of Claims Not Adjudicated on the Merits in State Court

■ A federal court may be prevented from reviewing a petitioner's habeas claims if the petitioner failed to exhaust or procedurally defaulted the claims before the state court. In other words, as a matter of comity and federalism, the state courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court. *See Coleman v. Thompson,* 501 U.S. 722, 729–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (de-

scribing and discussing interplay of exhaustion and procedural default doctrines).

### 1. Exhaustion of Remedies

Federal habeas relief shall not be granted "unless it appears that the applicant has exhausted the remedies available" in state court. 28 U.S.C. § 2254(b)(1)(A); *Krimmel v. Hopkins,* 56 F.3d 873, 875–76 (8th Cir.1995). This exhaustion requirement may be excused only if it would be futile for the federal court to require exhaustion; *i.e.* where there are no available state procedures to be exhausted or where the state procedures are ineffective. 28 U.S.C. § 2254(b)(1)(B)(i)–(ii).

■ To satisfy the exhaustion requirement, a petitioner must "fairly present" his claims to the state courts. *Krimmel,* 56 F.3d at 875–76. A claim is "fairly presented" to the state courts, and thus preserved for federal habeas review, when the petitioner has properly raised both the factual and legal premises of the claim in state court proceedings. *Krimmel,* 56 F.3d at 876. The petitioner must afford the highest state court "a fair opportunity to rule on the factual and theoretical substance of his claim." *Id.*

■ "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson,* 114 F.3d 754, 757 (8th Cir.1997) (internal quotation omitted). It is not necessary to cite "book and verse" on the federal constitution—it is sufficient that the constitutional substance of a claim is apparent. *Wyldes v. Hundley,* 69 F.3d 247, 251 (8th Cir.1995). The same factual arguments and legal theories, however, must be pres-

should not or should apply. *Kinder,* 272 F.3d at 537 n. 4.

ent in *both* the state and federal claims. *Schneider v. Delo,* 85 F.3d 335, 339 (8th Cir.1996); *see, e.g., Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ("The claim that an indictment is invalid is not the substantial equivalent of a claim that it results in an unconstitutional discrimination."). The federal court may review closely related claims containing an "arguable factual commonality." *Anderson v. Groose,* 106 F.3d 242, 245 (8th Cir.1997).

## 2. Procedural Default

■ Although a petitioner may technically be able to meet the exhaustion requirement, the federal court may still be prevented from considering a petitioner's federal habeas claim if the claim is procedurally defaulted. *Coleman,* 501 U.S. at 729–32, 111 S.Ct. 2546 ("[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."); *Krimmel,* 56 F.3d at 875. A claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction proceedings. *Kilmartin v. Kemna,* 253 F.3d 1087, 1088 (8th Cir.2001).

■ The procedural default doctrine is in part premised on the principle that a federal court is precluded from considering the federal legal or federal constitutional dimensions of any claim that a state court previously resolved on an independent and adequate state ground. *Murray v. Hvass,* 269 F.3d 896, 898 (8th Cir.2001). An independent and adequate state ground may include an "independent and adequate state *procedural* ground," for example, a state court determination that a claim has been lost due to default. *Id.* Thus, the federal court is barred from reviewing a petitioner's habeas claim under the doc-

trine of procedural default if: (1) the petitioner has actually violated an applicable state procedural rule; (2) the procedural violation provides an "adequate" and "independent" state ground for denying for denying the petitioner's federal constitutional claim; (3) the highest state court to rule on the claim clearly and unambiguously relied on the procedural violation as its reason for rejecting the claim; (4) the state has adequately and timely asserted the procedural default as a bar to federal habeas relief; (5) the petitioner cannot "excuse" the procedural default. James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 26.1 (3d ed.1998).

■ A petitioner's claim may also be procedurally defaulted for failure to present the claim to the state courts entirely. "[W]here a federal habeas petitioner raises a claim which has *never* been presented in any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state law, such that a remedy in state court is unavailable...." *Harris v. Reed,* 489 U.S. 255, 268–270, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring); 28 U.S.C. § 2254(c). In other words, if the petitioner "failed to exhaust state remedies and the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,]" for purposes of federal habeas review, the petitioner's claim is considered procedurally defaulted. *Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Here, too, the federal court cannot consider the petitioner's claim unless the petitioner can "excuse" the procedural default.

■ A petitioner can "excuse" the procedural default of his claims in state court, and obtain federal habeas review of those claims, only if the petitioner can demonstrate either: (1) cause for the de-

fault and actual prejudice as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction of one who is actually innocent. *Murray*, 269 F.3d at 898; *Fann v. Bowersox*, 247 F.3d 841, 843 (8th Cir.2001). "Cause" for the procedural default exists, for example, when counsel has been constitutionally ineffective or when an objective, external impediment prevented counsel from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions ... [such that he] was denied fundamental fairness at trial." *Murray*, 477 U.S. at 494, 106 S.Ct. 2639 (internal quotation and punctuation omitted).

## C. Availability of Evidentiary Hearing on Federal Habeas Review

■ The AEDPA has significantly restricted the availability of evidentiary hearings on federal habeas review. Prior to the AEDPA, new evidentiary hearings were required in several circumstances. *See Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (enumerating circumstances where evidentiary hearing required, including when the material facts were not adequately developed in state court); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (narrowing *Townsend* by requiring petitioner to show cause and prejudice); 28 U.S.C. § 2254(d) (1995) (pre-AEDPA). The AEDPA, by comparison, permits evidentiary hearings on federal habeas review, although under very limited circumstances. In particular, the opening clause of 28 U.S.C. § 2254(e)(2) provides: "If the applicant has failed to

develop the factual basis of a claim in State court proceedings, the [federal district] court shall not hold an evidentiary hearing on the claim unless the applicant [satisfies certain criteria]." Thus, to determine whether an evidentiary hearing is appropriate, this Court must "ask first whether the factual basis [of petitioner's claim] was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." *Michael Wayne Williams v. Taylor*, 529 U.S. 420, 434, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

■ If the factual basis of a claim was not developed in state court, the district court must determine whether it was the petitioner who failed to develop the factual basis of his claim. "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the [petitioner] or the [petitioner's] counsel." *Michael Wayne Williams*, 529 U.S. at 432, 120 S.Ct. 1479. "[T]he question is not whether the facts could have been discovered but instead whether the petitioner was diligent in his efforts." *Id.* at 435, 120 S.Ct. 1479. "Diligence for the purposes of the opening clause [of § 2254(e)(2)] depends upon whether the [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* Where there has been no lack of diligence on petitioner's part a petitioner is not charged with failure to develop the factual basis of the claim as described in the opening clause of § 2254(e)(2), and is thus "excused from showing compliance with the balance of the subsection's requirements." *Id.* at 437, 120 S.Ct. 1479. In such a situation, a petitioner is not precluded from an evidentiary hearing under that subsection.

However, if the petitioner fails to exercise diligence, he has contributed to the

absence of a full and fair adjudication in state court. *Michael Wayne Williams*, 529 U.S. at 437, 120 S.Ct. 1479. In fact, the plain language of the statute prohibits an evidentiary hearing to develop a claim in federal court unless the claim meets the stringent requirements set forth in § 2254(e)(2)(A) & (B). Briefly stated, where the petitioner has failed to develop the factual basis of a claim in state court, the petitioner cannot obtain an evidentiary hearing unless the petitioner demonstrates: (1) the claim relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, or (2) the claim relies on facts that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i)–(ii). If the petitioner can satisfy either of these two criteria, an evidentiary hearing is still prohibited unless the petitioner can show by clear and convincing evidence that no reasonable factfinder would have found him guilty but for the alleged constitutional error. 28 U.S.C. § 2254(e)(2)(B); *Michael Wayne Williams*, 529 U.S. at 440, 120 S.Ct. 1479; *Hatcher v. Hopkins*, 256 F.3d 761 (8th Cir.2001).

■ If the factual basis of a claim was developed in state court, a district court may, in its discretion, conduct an evidentiary hearing to assist in ascertaining whether federal habeas relief is appropriate. *Valdez v. Cockrell*, 274 F.3d 941, 952 (5th Cir.2001); *Morris v. Dormire*, 217 F.3d 556, 559 (8th Cir.2000) (district court's decision on holding evidentiary hearing reviewed for abuse of discretion).

### III. Discussion of Claims for Which Petitioner Requests Evidentiary Hearing

### A. Ground 2: Victim Impact Evidence

In Ground 2, petitioner asserts that the introduction of victim impact testimony by Mary Hussian during the penalty phase of his trial violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Petitioner complains his constitutional rights were violated because: (1) Arkansas Code Annotated § 5–4–602(4) ("Victim Impact Statute"), which permits the presentation of victim impact evidence, creates a new aggravator outside the state statutory scheme of aggravators set forth in Arkansas Code Annotated § 5–4–604; (2) the presentation of victim impact evidence constitutes a departure from the normal statutory sentencing scheme in which aggravating and mitigating factors are weighed, and permits the jury to impose death for an impermissible reason such as sympathy or indignation; (3) petitioner's crime was committed prior to the enactment of the Victim Impact Statute, and the retroactive application of that statute to petitioner violates the *ex post facto* constitutional prohibition; and (4) victim impact evidence is irrelevant to the aggravating or mitigating circumstances raised by the parties. The Court will address these alleged constitutional violations in turn.

### 1. Creation of New Aggravator by Victim Impact Statute

■ Petitioner argues that the Victim Impact Statute, Ark.Code Ann. § 5–4–602(4), which permits the presentation of victim impact evidence, creates a new aggravator outside the state statutory scheme of aggravators set forth in Arkansas Code Annotated § 5–4–604. Respondent states that this issue is procedurally barred from this Court's consideration due to petitioner's failure to fairly present it in state court. On petitioner's direct appeal, the Arkansas Supreme Court stated: "Noel's due process claim that victim-impact evidence under the statute created a new aggravating circumstance was not ar-

gued to the trial court and, thus, is not preserved for our review." *Noel,* 960 S.W.2d at 441.

Petitioner asserts that this argument was in fact presented to the trial court, and that the Arkansas Supreme Court overlooked petitioner's victim impact pleadings filed in the trial court[4] and abstracted on direct appeal. This Court has reviewed petitioner's victim impact pleadings, and believes petitioner's "Second Supplemental Motion to Prevent Introduction of Victim Impact Statements" could fairly be construed to raise the argument that the Victim Impact Statute creates a new aggravating factor outside the statutory scheme of aggravating factors and violates due process.[5] The argument section of petitioner's brief on direct appeal states: "In enacting Ark.Code Ann. § 5–4–602(4) (Repl.1994), pursuant to which victim impact evidence is introduced, the legislature improperly created a new aggravating circumstance, victim impact, to a procedural statute. Placing it inside this procedural statute violates the due process clause."[6]

■ Thus, this Court believes it is appropriate to reach the merits of petitioner's claim, as the state's highest court had a fair opportunity to consider the claim and apparently failed to do so.[7] In Arkansas, the legislature has provided an exclusive list of aggravating circumstances upon which the state may rely in seeking the death penalty. *See* Ark.Code Ann. § 5–4–604. Petitioner complains that the legislature improperly created a new aggravating circumstance in enacting the Victim Impact Statute. Of course, the legislature may act to establish a new aggravating factor. However, this Court does not believe that the Arkansas legislature intended to create a new aggravating circumstance by enacting the Victim Impact Statute. A court must assume that the legislature was aware of the earlier act when it passed the later one. *Johnson v. State,* 331 Ark. 421, 961 S.W.2d 764, 766 (1998). Presumably, then, the legislature was aware of the exclusive list, as well as the requirement that the death penalty be narrowly circumscribed, and did not intend to make victim impact a factor in that list. Further, according to the Arkansas Supreme Court, "[B]y expanding the scope of permissible [victim impact] evidence during the penalty phase, the

---

4. *See* docket no. 8, Exhibit 4(a), at 17–20 (Motion to Preclude the Introduction of Victim Impact Evidence Pertaining to the Background and Life History of the Victim), 21–25 (Motion to Require A Pretrial Judicial Review of All Victim Impact Evidence the State Intends to Introduce at the Capital Sentencing Proceedings), 26–29 (Motion to Preclude the Introduction of Victim Impact Evidence Pertaining to the Family Members [sic] Characterizations and Opinions About the Crime, the Defendant, and/or the Appropriate Sentence); 228–30 (Second Supplemental Motion to Prevent Introduction of Victim Impact Statements); 287–96.

5. *See* docket no. 8, Exhibit 4(a), at 228–30.

6. *See* docket no. 39, Exhibit 2, at 11. Neither party has filed a copy of the abstract, but the Court will assume petitioner abstracted the content of this motion based on the following statement in petitioner's brief on direct appeal: "At a pretrial hearing, the motions [to prevent the introduction of victim impact evidence] were denied. (A.44, 45)."

7. Despite the Arkansas Supreme Court's statement that it would not consider this issue, the Court notes that the Arkansas Supreme Court stated in its opinion: "We hold, once again, that victim-impact evidence is not an additional aggravating circumstance but rather is relevant evidence which informs the jury of the toll the murder has taken on the victim's family." *Noel,* 960 S.W.2d at 446. To the extent this statement amounts to a specific denial of petitioner's claim, this Court finds that it is supported by *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), and thus, pursuant to 28 U.S.C. § 2254(d), could not provide grounds for federal habeas relief.

General Assembly has not ... added a new aggravating circumstance." *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677, 689 (1995). That the Arkansas legislature has provided for the presentation of victim impact evidence simply gives effect to what is constitutionally permissible under *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The mere fact that the legislature has provided for the presentation of victim impact evidence does not mean that the victim impact evidence will be so unduly prejudicial as to render the trial fundamentally unfair and violate due process. *See id.* at 825, 111 S.Ct. 2597. Therefore, petitioner is not entitled to relief on this legal aspect of his victim impact claim. This Court further determines that, because this claim pertains to a matter of law, it is not necessary to conduct an evidentiary hearing on this issue.

## 2. *Departure from Weighing of Aggravating and Mitigating Factors*

■■■ Petitioner next argues that the presentation of victim impact evidence constitutes a departure from the normal statutory sentencing scheme in which aggravating and mitigating factors are weighed, and permits the jury to impose death for an impermissible reason such as sympathy or indignation. According to petitioner, the introduction of matters other than the enumerated aggravating factors specified in Arkansas Code Annotated § 5-4-604 violates due process. Petitioner further argues that the scheme, as written and applied, violates the Eighth Amendment because it broadens, rather than channels, the jury's discretion in making its determination whether to impose the death penalty.

Because this claim was adjudicated on the merits in state court, this Court must determine whether the Arkansas Supreme Court's decision on this point is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Arkansas Supreme Court held that under *Payne v. Tennessee*, and as expressed by the legislature's enactment of the Victim Impact Statute, victim impact evidence is relevant evidence which informs the jury the toll the murder has taken on the victim's family. *Noel*, 960 S.W.2d at 446. The Arkansas Supreme Court further found that the victim impact testimony presented at petitioner's trial did just this, and was not so unduly prejudicial as to render the trial fundamentally unfair in violation of the Due Process Clause. *Id.* at 447. Finally, petitioner's Eighth Amendment argument cannot survive the United States Supreme Court's statement that "the Eighth Amendment erects no *per se* bar" to the admission of victim impact evidence. *Payne*, 501 U.S. at 827, 111 S.Ct. 2597. Aggravating circumstances give effect to Eighth Amendment protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. *Tuilaepa v. California*, 512 U.S. 967, 979-80, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it is found that the defendant is a member of the class eligible for that penalty." *Id.* (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." *Id.* at 979, 114 S.Ct. 2630.

The Arkansas Supreme Court did not apply a rule in direct contradiction to United States Supreme Court precedent—in fact, the Arkansas Supreme Court correctly identified and reasonably applied the United States Supreme Court's governing legal standards concerning victim impact evidence. Petitioner is not entitled to fed-

eral habeas relief on this claim. This Court further determines that, because this claim can be resolved on the record alone, it is not necessary to conduct an evidentiary hearing on this issue.

### 3. Ex Post Facto Constitutional Prohibition

Petitioner asserts that the Victim Impact Statute is unconstitutional as applied to petitioner under the *ex post facto* clause of the United States Constitution because it permits the introduction of "victim impact" evidence retroactively in death cases where the crime was committed prior to the enactment of the statute. Respondent asserts that this claim is procedurally barred due to petitioner's failure to present it in state court. Petitioner responds that his procedural default may be excused either due to the failure of the Arkansas Supreme Court to conduct mandatory review of the record on direct appeal or due to ineffective assistance of counsel. For the reasons stated in this Court's discussion of Ground 1, *infra*, the Court finds that the Arkansas Supreme Court's failure to conduct mandatory review on direct appeal does not establish cause to excuse petitioner's procedural default. Likewise, as explained in this Court's discussion of Ground 15, *infra*, petitioner's ineffective assistance of counsel claim does not establish cause for his procedural default. Even if this Court were to consider petitioner's claim on its merits, petitioner would not be able to obtain relief. Procedural changes that "work to the disadvantage of the accused do[ ] not violate the *ex post facto* clause." *Collins v. Youngblood*, 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In *Payne*, the United States Supreme Court intimated that a state's decision to permit victim impact evidence at sentencing was a procedural matter. *Payne*, 501 U.S. at 824–25, 111 S.Ct. 2597. However the claim is considered, this Court finds that, because this claim pertains to a matter of law, it is not necessary to conduct an evidentiary hearing on this issue.

### 4. Relevance of Victim Impact Evidence to Aggravating or Mitigating Circumstances

For his final victim impact claim, petitioner asserts that the victim impact evidence was not relevant to the aggravating or mitigating circumstances raised by the parties. Respondent asserts that this argument is procedurally defaulted, while petitioner asserts that it is apparent from the Arkansas Supreme Court's opinion that the Arkansas Supreme Court considered his relevancy argument on appeal. *See Noel*, 960 S.W.2d at 446–47. Even if petitioner's argument is not procedurally defaulted, petitioner cannot obtain relief. As a matter of law, the United States Supreme Court has explicitly held that victim impact evidence is, as a general matter, relevant. *Payne*, 501 U.S. at 827, 111 S.Ct. 2597. In petitioner's case, the Arkansas Supreme Court found that the victim impact testimony was relevant: "[T]he State sought to show the human cost of the murders on Mary Hussian, much the same as the defense sought to show, in mitigation, the human toll on Noel's mother in the event of a State execution." *Noel*, 960 S.W.2d at 447. If indeed the Arkansas Supreme Court found the victim impact testimony relevant, that determination was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See Payne*, 501 U.S. at 827, 111 S.Ct. 2597. Nor, in the context of the testimony at petitioner's sentencing phase and the mitigating factors submitted to the jury, was it an unreasonable determination of the facts. Finally, to the extent petitioner claims he can excuse any procedural default due to the failure of the Arkansas

Supreme Court to conduct mandatory review of the record on direct appeal or due to ineffective assistance of counsel, this Court finds those claims unavailing as explained in this Court's discussion of Ground 1 and Ground 15, *infra*. However this claim is considered, this Court finds that it is either unnecessary to conduct an evidentiary hearing because this claim can be resolved on the record alone, or alternately that petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e)(2).

## B. Ground 3: Change of Venue

In Ground 3, petitioner asserts that the trial court's denial of his motion for a change of venue denied him a fair and impartial jury and a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Specifically, petitioner asserts that a change of venue was warranted due to "excessive prejudicial pretrial publicity." In support of this assertion, petitioner refers to a "high percentage of prospective jurors" who acknowledged that their perceptions of petitioner were "tainted" by pretrial publicity.

■■■ Respondent agrees that petitioner raised the issue of venue in his direct appeal. *Noel,* 960 S.W.2d at 441. However, respondent argues that petitioner's change of venue claim is procedurally barred because the federal constitutional dimensions of petitioner's habeas venue claim were not raised before the state court. This Court disagrees. Petitioner cited at least two cases to support his venue claim before the Arkansas Supreme Court which make the constitutional substance of his claim apparent.[8] *See Arkansas Gazette Co. v. Goodwin,* 304 Ark. 204, 801 S.W.2d 284, 285 (1990) ("The Due Process Clause of the fourteenth amendment guarantees the right of a fair trial by a

panel of impartial jurors to the criminally accused in state criminal prosecutions.... If, due to pretrial publicity, an impartial jury cannot be seated to try a defendant, his right to a fair trial is violated."); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). As previously stated, a federal claim is fairly presented to the state courts if the petitioner has referred to a federal constitutional case or a state case raising a pertinent federal constitutional issue. *McCall,* 114 F.3d at 757.

■■■ Petitioner's claim is procedurally barred, however, due to petitioner's failure to present the particular "high percentage of prospective jurors" theory to the state trial court. As stated by the Arkansas Supreme Court, "Noel claims that a high percentage of prospective jurors were successfully challenged for cause due to the publicity surrounding the murders and that this fact evidenced the insidious persuasiveness of the adverse publicity. Noel, however, failed to raise this argument to the trial court, and we will not address it for the first time on appeal." *Noel v. State,* 960 S.W.2d at 442; *see also Robinson v. State,* 317 Ark. 407, 878 S.W.2d 405, 407 (1994) ("We have repeatedly stated we will not address issues raise for the first time on appeal."). Because petitioner did not fairly present this factual argument to the state courts, this Court cannot now consider it on federal habeas review, absent a demonstration of cause and prejudice or actual innocence. Petitioner generally asserts ineffective assistance of counsel as cause for this procedural default; however, for the reasons explained in this Court's discussion of Ground 15, *infra,* petitioner's allegations of ineffective assistance of counsel do not constitute cause to excuse his procedural default.

---

8. *See* docket no. 39, Exhibit 2, at 1–3.

■ To the extent petitioner wishes this Court to review the non-defaulted remainder of his claim that the trial court should have granted his motion for change of venue due to "excessive prejudicial pretrial publicity," the Court must do so in accordance with the standards set forth in 28 U.S.C. § 2254(d)(1)–(2) & (e)(1). Petitioner does not specify the particular manner in which he challenges the state courts' legal determination on the change of venue issue. Because petitioner cites several United States Supreme Court cases outlining when a change of venue is constitutionally required, and asserts such a change was warranted in his case, this Court assumes petitioner complains that the state court applied the correct law to his situation in an unreasonable fashion or with an unreasonable result, or that the state court decided his case differently from a Supreme Court case with materially indistinguishable facts.

In evaluating whether a change of venue is warranted, the United States Supreme Court has stated that "[t]he constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent" jurors'.... Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). In support of his motion for change of venue, petitioner submitted the affidavits of two Pulaski County registered voters who asserted in conclusory fashion that it would not be possible for petitioner to receive a fair trial in Pulaski County due to the extensive pretrial publicity they had witnessed on television and in the newspaper.[9] Petitioner's counsel also made general reference to the publicity in argument before the trial court, but did not cite specific instances.[10] The state court found these affidavits, and counsel's

argument, inadequate to demonstrate sufficient prejudicial publicity to support a change of venue, and concluded the trial court had not abused its discretion in denying the change of venue motion. *Noel*, 960 S.W.2d at 441–42.

This Court cannot say that the state court's determination was an unreasonable application of clearly established law. The level of prejudicial publicity warranting a change of venue in the cases cited by petitioner is far greater than that petitioner presented before the state courts. *Compare, e.g., Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (actual prejudice rendered fair trial impossible where barrage of inflammatory publicity immediately before trial included information on defendant's prior convictions, his confession to burglaries and murders including the one for which he was tried, and unaccepted offer to plead guilty, and eight of twelve jurors had formed opinion defendant was guilty before trial began); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (prejudice presumed where defendant confessed under police interrogation to the murder and twenty minute film of confession was aired three times); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Discussing these same cases, the United States Supreme Court stated: "The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or news accounts of the crime with which he is charged alone presumptively

---

9. *See* docket no. 8, Exhibit 4(a), at 237–40.

10. *See* docket no. 8, Exhibit 4(a), at 345–47.

deprives the defendant of due process." *Murphy*, 421 U.S. at 799, 95 S.Ct. 2031.

Although a juror's mere assurance of impartiality may not be dispositive, petitioner also fails to show that he was in fact prejudiced due to pretrial publicity in the selection of the specific jurors in his case. In considering petitioner's change of venue claim, the Arkansas Supreme Court stated: "[T]his court has held that a denial of a change of venue motion will not be reversed if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. All of the jurors in the instant case pledged that they could decide the case based solely on the evidence." *Noel*, 960 S.W.2d at 442 (internal punctuation and citations omitted). This finding of the Arkansas Supreme Court is supported by the record, and having reviewed the transcript of voir dire in contrast to petitioner's abstract arguments, the Court believes the state court decision is not the result of an unreasonable determination of the facts.[11] *Kinder*, 272 F.3d at 541–42. The Court further believes the applicable due process standards, as expressed by the United States Supreme Court, were satisfied in this case. Thus, petitioner cannot obtain relief on this claim. Additionally, this Court finds that it is unnecessary to conduct an evidentiary hearing on petitioner's change of venue claim because the claim can be resolved on the record alone, or alternately, that petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e)(2).

## C. Ground 4: Improper and Inflammatory Testimony

In Ground 4, petitioner argues that Mary Hussian's "improper and inflammatory testimony" during the guilt phase of his trial, and the trial court's denial of petitioner's motions for mistrial in response to Mary Hussian's testimony, violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Petitioner specifically refers to two areas of Mary Hussian's testimony: (1) her statement on direct examination: "He [Noel] looked like an animal that night;"[12] and (2) her statement on cross examination, in response to questions about her presenting a forged prescription for painkillers, that she did so: "After I was notified Riley Noel was out."[13] Petitioner claims that the latter statement was a comment on petitioner's escape from custody after his arrest for the murders, an event the trial court had ruled was inadmissible.[14]

Respondent asserts that petitioner raised both of the foregoing comments in connection with his direct appeal, but not on the federal constitutional basis advanced in his current habeas petition.[15] Rather, on direct appeal, petitioner asserted that the cumulative effect of character evidence introduced by the prosecution vi-

---

**11.** *See* docket no. 8, Exhibit 4(a), at 426–47; *id.*, Exhibit 4(b), at 473–97, 528–52, 755–79; *id.*, Exhibit 4(c), at 1120–33, 1238–53, 1263–77, 1297–1314, 1322–41 1342–49; *id.*, Exhibit 4(d), at 1350–67, 1398–1412.

**12.** *See* docket no. 8, Exhibit 4(d), at 1556.

**13.** *See* docket no. 8, Exhibit 4(d), at 1574.

**14.** The Court notes that information about petitioner's escape eventually came out dur-

ing petitioner's testimony. *See* docket no. 8, Exhibit 4(e), at 1830–31.

**15.** Although petitioner generally cites the Fifth, Eighth, and Fourteenth Amendments, petitioner does not clearly state the alleged constitutional violation. This Court notes that a due process violation is established, for example, when an error is "gross, conspicuously prejudicial, or of such import that the trial was fatally infected." *Rhodes v. Foster*, 682 F.2d 711, 714 (8th Cir.1982).

olated Rule 404(a) of the Arkansas Rules of Evidence and tainted his trial. Petitioner cited five instances to support this argument, including the two instances of Mary Hussian's alleged "improper and inflammatory" testimony at issue here. The Arkansas Supreme Court, in considering petitioner's claim, stated:

> [W]e have stated that a reversal of a conviction based on cumulative error is only appropriate in 'rare and egregious' cases. An analysis of the five instances complained of in the instant case illustrates that neither individually nor collectively do they rise to the level of reversible error. First, Mary Hussian's testimony that Noel looked like 'an animal' on the night of the murders is not a representation of his character and was not objected to on that basis. The trial court properly denied the motion for mistrial, and defense counsel did not request an admonishment. Second, Hussian's statement that she forged a prescription because she had heard that Noel 'was out' was made during defense counsel's cross-examination and was not objected to on the grounds of improper character evidence. The trial court correctly denied the mistrial motion because the jury could just as easily have concluded that Noel was 'out' on bail, and again, defense counsel did not ask for an admonishment.

*Noel*, 960 S.W.2d at 443 (internal citations omitted).

This Court agrees with respondent that petitioner has procedurally defaulted his current improper and inflammatory testimony claim. Petitioner did not raise his current argument before the state court, and, as this Court explained earlier, the same factual arguments and legal theories must be present in both the state and federal claims. Petitioner's argument before the state court fails to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising the pertinent federal constitutional issue in a claim before the state courts.[16] Petitioner implicitly recognizes that this claim is procedurally defaulted, but states that this default may be excused, and his claim of improper and inflammatory testimony reached, in several ways.[17]

Petitioner first states this claim may be reached through his cumulative error claim in Ground 14. Because the Court must deny relief on the cumulative error claim of Ground 14, *see infra*, the Court finds this argument unavailing. Alternately, petitioner states he can demonstrate cause for his procedural default, either due to the failure of the Arkansas Supreme Court to conduct mandatory appellate review, or due to ineffective assistance of counsel. For the reasons stated in this Court's discussion of Ground 1, *infra*, the Court finds that the Arkansas Supreme Court's failure to conduct mandatory appellate review does not establish cause to excuse petitioner's procedural default. Petitioner generally asserts ineffective assistance of counsel as cause for this procedural default; however, for the reasons explained in this Court's discussion of Ground 15, *infra*, petitioner's allegations of ineffective assistance of counsel do not constitute cause to excuse his procedural default. Further, because petitioner cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2), an evidentiary hearing on pe-

---

16. The Court has reviewed the cases cited in the pertinent section of petitioner's brief on direct appeal, but none of these cases even arguably support his current federal constitu-tional claim. *See* docket no. 39, Exhibit 2, at 3–7.

17. *See* docket no. 46, at 9–10 (identifying cause).

titioner's claim of improper and inflammatory testimony is prohibited.

## D. Ground 5: False Evidence and/or Argument

 In Ground 5, petitioner asserts that he was denied due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution by the prosecution's presentation of "false evidence and/or argument" to the jury. Specifically, petitioner faults the prosecution for characterizing petitioner as a "psychopath" in penalty phase closing argument and for using the term during cross-examination of Dr. Brad Williams, a psychologist called by the defense in the penalty phase. Respondent replies that petitioner's "false evidence or argument" theory is procedurally defaulted because, although petitioner appealed the use of the term "psychopath," petitioner did not fairly present the theory now raised in his federal habeas petition to the state court.[18]

On direct appeal, petitioner did not assert his current "false evidence and/or argument" theory; rather, petitioner argued that the prosecutor's reference to "psychopath" shifted the burden of proof from the state to petitioner. On this issue, the Arkansas Supreme Court stated:

> [D]uring the prosecutor's closing argument at the end of the penalty phase, he [sic] referred to Noel as a 'psychopath.' Defense counsel objected, but not on grounds that this comment shifted the burden of proof. Nor did defense move for a mistrial or object to the trial court's subsequent admonishment of the jury, which he requested. This point is also not preserved for appeal. Moreover, Noel cannot now complain when he obtained the relief requested. *Rankin*

*v. State,* 329 Ark. 379, 948 S.W.2d 397 (1997).

*Noel,* 960 S.W.2d at 445. Petitioner implicitly recognizes that his current complaint of "false evidence and/or argument" is procedurally defaulted,[19] but states that he can demonstrate cause for the procedural default: the State's own failure to fulfill its obligation to correct the false evidence or argument.

The cases cited by petitioner, as relevant to this claim, address the due process violation that results when a prosecutor presents false evidence, fails to correct the presentation of false evidence, and makes argument based on false evidence. Petitioner correctly identifies the general governing legal principles: that the use of false evidence, including false testimony, to secure a conviction violates a defendant's right to due process, and that the prosecution's duty to correct false evidence arises when the false evidence appears. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, the legal principles and cases cited by petitioner are inapposite to the current situation. Here, for example, there is no allegation that the state presented false evidence that petitioner was a psychopath and then argued that false evidence before the jury. The "false characterization" complained of by petitioner does not amount to "false evidence" as that term is used in *Napue.* However captioned, petitioner's true argument is that the prosecution's closing argument, and specifically the reference to "psychopath," was improper and inflammatory. In fact, petitioner raises this precise issue in Ground 6 of his habeas petition, and this Court will address it there.

Returning, however, to petitioner's argument that the state's failure to correct the

---

**18.** The Court notes that, based on the Arkansas Supreme Court's treatment of the "psychopath" issue, federal habeas review might

also be inappropriate under the "independent and adequate state law grounds" doctrine.

**19.** *See* docket no. 46 at 10–11.

false evidence and argument constitutes "cause" for his procedural default, this Court finds that petitioner's argument must fail: since there was no false evidence and argument as contemplated by *Napue*, there was thus no duty of the prosecution to correct that false evidence and argument. Alternately, petitioner generally asserts ineffective assistance of counsel as cause for this procedural default; however, for the reasons explained in this Court's discussion of Ground 15, *infra*, petitioner's allegations of ineffective assistance of counsel do not constitute cause to excuse his procedural default. However this claim is considered, this Court finds that it is unnecessary to conduct an evidentiary hearing because this claim can be resolved on the record alone, or alternately that petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e)(2).

### E. Ground 8: Newly Discovered Evidence

■ In Ground 8, petitioner argues that he is entitled to penalty phase habeas relief under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution due to Mary Hussian's recantation of her "victim impact" testimony presented in petitioner's penalty phase proceedings. In the alternative, petitioner describes Mary Hussian's opposition to the death penalty as "newly discovered evidence." This recantation, or newly discovered evidence, takes the form of a letter addressed to this Court and attached to petitioner's amended petition for writ of habeas corpus.[20] However this issue is characterized, the Court questions whether petitioner in fact states a constitutional violation in this claim, but will address petitioner's claim out of an abundance of caution.

At the outset, this Court questions whether Mary Hussian has in fact "recanted" any testimony. *Black's Law Dictionary* defines "recant" as "[t]o withdraw or renounce (prior statements or testimony) formally and publicly." *Black's Law Dictionary* 1274 (7th ed.1999). Here, Mary Hussian has nothing to withdraw or renounce. Mary Hussian never stated, or even intimated, her preference of a sentence to be imposed on petitioner. Petitioner in fact filed a pre-trial motion to preclude the introduction of victim impact evidence pertaining to the victims' family members' characterizations and opinions about the appropriate sentence, which the trial court granted.[21] Mary Hussian's testimony addressed the impact that the death of her children had on her life and on her family's life.[22] Her only reference to petitioner was to say that he had "destroyed" her family.[23]

Even assuming Mary Hussian's "change of heart" about the death penalty constitutes a recantation of her prior testimony, the Court cannot say that the so-called "recantation," or newly discovered evidence, would probably change the result of the penalty phase. *Wainwright v. Lockhart*, 80 F.3d 1226, 1229 (8th Cir.1996).[24]

---

20. *See* docket no. 30, Exhibit A.

21. *See* docket no. 8, Exhibit 4(e), at 26–29, 290–91, 293.

22. *See* docket no. 8, Exhibit 4(e), at 2000–06.

23. *See* docket no. 8, Exhibit 4(e), at 2003.

24. The Court notes that the substance of this "newly discovered evidence" claim was never presented to the state courts. The "would probably produce an acquittal on retrial" standard used by the Eighth Circuit to address recanted testimony in *Wainwright v. Lockhart*, and used by this Court in reviewing petitioner's claim here, is far more generous than the standard that would be used if this Court were to strictly analyze this claim under the procedural default doctrine. *See infra* discussion of Ground 10; *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d

Mary Hussian's letter does not suggest that she would alter her testimony concerning the devastating effect of the loss of her children on her family—in fact, she states: "It is my opinion that life without parole will be death in itself for Mr. Noel as he too will have to deal with that night." [25] Additionally, during petitioner's penalty phase the state presented testimony from the victims of petitioner's previous violent felony convictions (arising out of two separate incidents in 1989): Herman James, whom petitioner shot and injured, and Michael Ragsdale, whom petitioner shot at and robbed.[26] This testimony was the basis for the first aggravating circumstance found by the jury: "Riley Noel previously committed another felony an element of which was the use or threat of serious physical injury to another person or creating a substantial risk of death or serious physical injury to another person." [27] Finally, this Court recognizes that the Arkansas Supreme Court recently held that the opinion of a victim's family member as to the appropriate punishment is not relevant as mitigating evidence and does not constitute victim-impact evidence. *See Greene v. State*, 343 Ark. 526, 37 S.W.3d 579, 583–86 (2001).

The Court appreciates Mary Hussian's sentiments, but cannot find that they constitute a recantation of her penalty phase testimony. Alternately, penalty phase habeas relief is not appropriate because Mary Hussian's "recantation" does not alter the remainder of Mary Hussian's testimony, change the testimony of Herman James and Michael Ragsdale, or bear on the jury's finding of aggravating circumstances. Petitioner has not demonstrated that Mary Hussian's "recantation" would probably change the result of the penalty phase. For these reasons, this Court must deny petitioner's newly discovered evidence claim. Further, because petitioner cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2), an evidentiary hearing on petitioner's claim of improper and inflammatory testimony is prohibited.

### F. Ground 10: Newly Discovered Evidence

On January 28, 2002, this Court entered an Order [docket no. 64] denying relief as to petitioner's Ground 10 in the course of ruling on petitioner's motion for additional medical testing. Petitioner subsequently filed a motion for reconsideration [docket no. 65] of the Court's January 28, 2002 Order, respondent filed a response to that motion [docket no. 67], and petitioner filed a reply [docket no. 69]. Having considered petitioner's motion for reconsideration, which must be denied, this Court now *substitutes* this Order in place of the January 28, 2002 Order [docket no. 64], with the same result: petitioner's motion for additional medical testing [docket no. 61] is denied; Ground 10 of petitioner's amended petition for writ of habeas corpus [docket no. 30] is denied; and respondent's motion to preclude petitioner from calling witnesses prior to compliance with 28 U.S.C. § 2254 [docket no. 38] as to Ground 10 is granted.

In Ground 10, petitioner argues that he is entitled to penalty phase habeas relief under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on newly discovered mitigating evidence that he suffers from brain abnormalities (including learning disorders, probable organic brain damage, and convulsions contributing to his aggressive behavior) which explain behavioral abnor-

---

269 (1992); *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

**25.** *See* docket no. 30, Exhibit A.

**26.** *See* docket no. 8, Exhibit 4(e), at 1650–58.

**27.** *See* docket no. 8, Exhibit 4(f), at 22773–75.

malities.[28] In essence, petitioner argues that recent advances in psychiatry and medical technology now permit the medical community to diagnose brain abnormalities in a way that was not possible, or through tests that were not available in Arkansas and not recognized as reliable, at the time of his trial. Couching his claim as one of newly discovered evidence, petitioner argues "his sentencing jury should have been made aware of this brain abnormality as a possible mitigating circumstance and/or as a possible contributing factor in the crimes of which his [sic] was found guilty."[29]

Both petitioner and respondent acknowledge that petitioner's claim of newly discovered mitigating evidence concerning his alleged brain abnormalities is "procedurally defaulted" in that it was never presented to the state court, and, were it to be so presented, would be found by the state court to be defaulted. *See Robinson v. Crist*, 278 F.3d 862 (8th Cir.2002) (state may waive exhaustion defense without waiving procedural default defense). Therefore, as explained previously, this Court cannot consider petitioner's habeas claim unless he can demonstrate cause and prejudice for the procedural default, or actual innocence.

At the outset, this Court notes that 28 U.S.C. § 2254 permits a prisoner in state custody to petition a federal court for a writ of habeas corpus "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (em-

phasis added). The heading of petitioner's newly discovered mitigating evidence claim refers to the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; however, earlier pleadings did not explain how, specifically, those constitutional protections were implicated in petitioner's situation. In his motion for reconsideration, petitioner clarifies that he seeks to invoke his Eighth Amendment right as a defendant in a capital case to present any and all mitigating evidence to the sentencer.[30]

■ Petitioner seeks to excuse his procedural default by attempting to satisfy the "cause and prejudice" standard. Petitioner states that his "cause" for not having previously raised this newly discovered mitigating evidence concerning his alleged brain abnormalities is, in fact, just that— this evidence is new. According to petitioner, recent advances in psychiatry and medical technology now permit the medical community to diagnose brain abnormalities in a way that was not possible or not considered reliable, or through tests that were not available in Arkansas, at the time of his trial. Thus, petitioner could not have presented this information at the time of trial, because it was not yet available.[31] With regard to prejudice, petitioner states that trial counsel surely would have had these additional tests performed on him and presented the resulting information to the jury had the tests been available locally or considered reliable.[32] In turn, petitioner was prejudiced because

---

**28.** *See* docket no. 30 at 30–32. *See also* docket no. 46 (Response to Motion to Preclude Petitioner From Calling Witnesses Prior to Compliance with 28 U.S.C. § 2254) at 13–18, 24; docket no. 61; docket no. 63.

**29.** *See* docket no. 63 at 2.

**30.** *See* docket no. 69, at 10.

**31.** For purposes of this motion, this Court will simply assume the most favorable scenar-

io for petitioner, *i.e.*, that the recent psychological and neurological testing of petitioner would in fact demonstrate that he suffers from organic brain abnormalities which could explain behavioral abnormalities.

**32.** The Court notes that, probably for good reason, petitioner does not raise ineffective assistance of counsel as an issue in this claim, and this the Court will not address this claim from that perspective.

the jury could not consider this newly discovered evidence of mitigation.

■ Despite petitioner's efforts to couch his argument as one of cause and prejudice, the Court finds petitioner's assertion of newly discovered evidence of mitigation should properly be analyzed under the "miscarriage of justice" exception to the procedural default doctrine. Permitting petitioner to proceed under the cause and prejudice standard, rather than the miscarriage of justice exception, would circumvent and be inconsistent with Supreme Court precedent concerning the treatment of newly discovered mitigating evidence on habeas review.[33] Further, as demonstrated by the analysis that follows, proceeding under the cause and prejudice analysis is inapposite. "Cause" for a procedural default exists, in this sense, when an objective, external impediment prevents petitioner from raising his claim before the state courts. *Murray*, 477 U.S. at 488, 106 S.Ct. 2639. "Cause" contemplates something that was "not reasonably available" to the petitioner. *See id.* For example, had the prosecution wrongfully concealed evidence, the prosecution's action (or inaction) might constitute cause. In the factual context, the concept of something being "not reasonably available" necessarily implies that it is *somewhere* available, and that the petitioner is *unaware* that it exists. Petitioner argues in his motion for reconsideration that the medical tests were indeed somewhere available, but were not *reasonably* available because the testing procedures were not sufficiently refined or respected at that time and thus lacked probative value.[34] This argument stretches the concept of "reasonable availability." The tests, in their current form or with their current stature, did not exist at the time of petitioner's trial. To the extent the tests did exist and trial counsel did not pursue the testing then available because it was not sufficiently refined, such a decision could constitute a decision of trial strategy (and would negate petitioner's characterization of this evidence as "new"). This Court has difficulty understanding how petitioner's rights to due process and to present mitigating evidence at sentencing were violated by the failure of this evidence to exist in its current or refined form at the time of his sentencing.

■ Even assuming "cause" includes evidence that did not previously exist in its

33. *See infra* discussion of "actual innocence of death penalty," this section. *See also Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (habeas requires an underlying constitutional violation); *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (actual innocence is only a gateway to habeas relief); *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (additional mitigating evidence does not show state statutory prerequisite for imposition of death penalty could not have been satisfied).

34. Specifically, Dr. Brad Diner, who consulted on petitioner's case before trial and again recently, states: "In 1996, the QEEG was not proven to have any real clinical utility, however, it is much more accepted now among the psychiatric community as a reliable indicator of subtle brain dysfunction. In fact, since my evaluation in 1996, the Bridgeway Hospital has developed a neuropsychological evaluation program which utilizes a QEEG measurement in the evaluation of aggressive children and adolescents. I am not aware that we could have even obtained a QEEG in Arkansas prior to the summer of 1996. Further, although SPECT scans were available, the quality of the product was so poor that clinical analysis was only presumptuous. The quality of these scans is so much better now that we are able to use them in a variety of neuropsychiatric conditions to help locate brain dysfunction.... In summary, it is unlikely that we would have pursued a QEEG or SPECT scan in Mr. Noel's case in 1996 because these evaluation modalities were unreliable and had premature predictive value. They are much more sensitive and specific today." *See* docket no. 46, first attachment.

current or refined form, petitioner still cannot demonstrate cause to excuse his procedural default because the fact that a petitioner "did not possess, or could not reasonably have obtained, certain evidence fails to establish cause if other known or discoverable evidence could have supported the claim in any event." *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *see also Amadeo v. Zant,* 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). This caveat is consistent with the principle that evidence is not "newly discovered" if the petitioner knew of the factual basis for the evidence at trial. *Meadows v. Delo,* 99 F.3d 280, 282 (8th Cir.1996). Although *McCleskey* is a successive petition, abuse-of-the-writ case, the Court finds the *McCleskey* reasoning instructive. In *McCleskey,* the petitioner had raised a *Massiah* claim in his first state habeas petition, but did not raise the claim in his first federal habeas petition. *See McCleskey,* 499 U.S. at 472–73, 111 S.Ct. 1454; *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). When the petitioner attempted to raise the *Massiah* claim in his second federal habeas petition, the state asserted this was an abuse of the writ. *Id.* at 473–74, 111 S.Ct. 1454. The district court held that the petitioner's assertion of the *Massiah* claim in his second federal habeas petition did not constitute an abuse of the writ because the petitioner had not deliberately withheld his claim for later review and, at the time he filed his first federal habeas petition, did not know about certain evidence supporting his *Massiah* claim. *Id.* at 475–76, 111 S.Ct. 1454. The Eleventh Circuit reversed. *Id.* at 476, 111

S.Ct. 1454. The Supreme Court examined whether the petitioner had "cause" for failing to raise the *Massiah* claim in his first federal habeas petition. *Id.* at 497, 111 S.Ct. 1454. The Supreme Court found that "cause" was not present, noting that although petitioner had not been previously aware of certain evidence supporting his *Massiah* claim, he had at least constructive knowledge of the facts contained in that evidence. *Id.* at 497–500, 111 S.Ct. 1454.

As previously stated, petitioner argues that "his sentencing jury should have been made aware of this brain abnormality as a possible mitigating circumstance and/or as a possible contributing factor in the crimes of which his [sic] was found guilty." [35] It is apparent, however, that other known evidence could have, and did in fact, support petitioner's claim of mitigating evidence of brain abnormalities at trial. While the current evidence might have enhanced petitioner's claim, the factual basis of petitioner's "brain abnormalities" claim has always been apparent. Petitioner presented evidence in the sentencing phase of his trial that included psychological evaluations (some dating back to his early childhood) and testimony indicating: he suffered from learning disabilities that could also be characterized as minimal brain damage; [36] the learning disabilities or minimal brain damage inhibited his ability to be empathetic; [37] the significant discrepancy in his IQ scores was characteristic of a student with learning disabilities; [38] he was diagnosed with anti-social personality disorder that would enhance his impulsivity; [39] and his disorder could be biologically or organically based. [40] Even the trial

35. *See* docket no. 63 at 2.

36. *See* docket no. 8, Exhibit 4(e), at 2029, 2037, 2055–58.

37. *See* docket no. 8, Exhibit 4(e), at 2057–58.

38. *See* docket no. 8, Exhibit 4(e), at 2028, 2054.

39. *See* docket no. 8, Exhibit 4(e), at 2060–61.

40. *See* docket no. 8, Exhibit 4(e), at 2059–60, 2073–74.

judge, during the sentencing phase jury instructions conference, noted that "there is some evidence of some mental defect.... The [psychologist] testified that there was brain damage. The jury most certainly could do that as mental defect." [41] Petitioner's trial counsel also argued these brain abnormalities to the jury in his closing argument, including their organic aspect. [42]

While the tests petitioner currently trumpets might have bolstered his claim of brain abnormalities, permitted more definitive testimony concerning his condition, or enhanced the credibility of the witnesses who did testify before the sentencing jury, as a matter of policy these suggestions cannot satisfy the "cause" requirement. "Omission of [a] claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *McCleskey*, 499 U.S. at 497, 111 S.Ct. 1454; *see also Harding v. Lewis*, 795 F.Supp. 953, 957–62 (D.Ariz.1992) (rejecting petitioner's claim of newly discovered medical evidence of organic brain dysfunction; basis for claim was available at trial). Likewise, where a petitioner *has* presented evidence on a subject, if a petitioner were permitted to re-open his trial by asserting "cause" every time he believed he had further supporting evidence on that subject, adjudications would never obtain the necessary finality. In this sense, such newly discovered (or newly refined) evidence is better addressed— and, based on this Court's review of the case law, almost exclusively addressed— under the miscarriage of justice exception. Accordingly, because petitioner cannot demonstrate "cause" for his procedural default, this Court may not consider his underlying constitutional claim, if he has one.

 Having found cause does not exist, this Court is not required to address prejudice, but will do so for the sake of completeness. *McCleskey*, 499 U.S. at 502, 111 S.Ct. 1454. To satisfy the prejudice requirement, a petitioner must demonstrate more than the mere possibility of prejudice—a petitioner must show that the error worked to the petitioner's *"actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Again, the Court finds bizarre the prospect that the "error" which is the basis of petitioner's claim is the failure of the evidence, effectively, to exist. Presumably, petitioner could argue that because the jury found petitioner presented some evidence of brain abnormalities, but unanimously agreed that the evidence was insufficient to establish that the mitigating circumstance probably existed, petitioner was prejudiced in that the jury might have found the mitigating circumstance existed had the tests been "available." [43] This theory is mere supposition, and petitioner fails to provide a logical explanation of how his trial (or here, his sentencing phase) was infected with *error of constitutional dimensions* due to the failure of this evidence to exist in its current form at the time of trial. Petitioner asserts that he was entitled, under the Eighth Amendment, to present any and all mitigating evidence to the sentencer—and as is apparent from the record, petitioner did exactly this at his sentencing. As previously

---

**41.** *See* docket no. 8, Exhibit 4(f), at 2133. These comments occurred during the discussion of the second mitigator: "The capital murder of [victim's name] was committed while the capacity of Riley Noel to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect."

**42.** *See* docket no. 8, Exhibit 4(f), at 2172–78.

**43.** *See* docket no. 8, Exhibit 4(f), at 2273–75.

stated, this Court has assumed, for purposes of this motion, the most favorable scenario for petitioner, *i.e.*, that the recent psychological and neurological testing of petitioner would in fact demonstrate that he suffers from organic brain abnormalities which could explain behavioral abnormalities. However, even if the jury believed the "brain abnormalities" mitigating circumstance, the Court notes that this would not change the fact that the jury also found that the prosecution proved both aggravating circumstances submitted as to all three victims: "Riley Noel previously committed another felony an element of which was the use or threat of serious physical injury to another person or creating a substantial risk of death or serious physical injury to another person;" and "In the commission of the capital murder, Riley Noel knowingly created a great risk of death to a person other than the victim[.]"[44] Petitioner has not demonstrated prejudice sufficient to excuse his procedural default.

██ Even assuming petitioner could demonstrate cause and prejudice, the Court must return to its initial question: whether there exists an underlying constitutional violation this Court may review. Petitioner seeks penalty phase relief, specifically, for the sentencing jury to be made aware of his brain abnormalities, to the extent they can now be diagnosed, as a possible mitigating circumstance or contributing factor in the crimes of which he was found guilty. In other words, petitioner's expectation is that if a jury were to hear the new mitigating evidence, he might not receive the death penalty.

This expectation is akin to a "miscarriage of justice" or "actual innocence" argument, *i.e.*, he is "actually innocent" of the death penalty because of his brain abnormalities.[45] This is a factual argument, and it is well established that federal courts do not sit to correct errors of fact on habeas review. 28 U.S.C. § 2254(a); *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In *Herrera*, the petitioner argued, based on new evidence, that he was actually innocent of the murder for which he was convicted, and that the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process of law therefore forbid his execution. The Supreme Court held that a claim of actual innocence based on newly discovered evidence was not grounds for federal habeas relief absent some underlying constitutional violation occurring in the state criminal proceeding. *Id.* Where an underlying constitutional violation exists, a federal habeas petitioner's claim of actual innocence is merely the "gateway" through which the petitioner passes so that the federal court may consider his underlying constitutional claim. *Schlup*, 513 U.S. at 315, 115 S.Ct. 851. For example, a petitioner may claim that he has newly discovered evidence of actual innocence, and if he can prove his actual innocence by the appropriate standard, *see infra* ("clear and convincing" for claims of actual innocence of penalty imposed; "more likely than not" for actual innocence of an offense), the federal court may consider a procedurally defaulted *Strickland* or *Brady* claim. *Schlup*, 513 U.S. at 314, 115 S.Ct. 851; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance of counsel); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (withholding of evidence by prosecution). The "actual innocence" claim is not in itself a constitutional claim, and stand-

**44.** *See* docket no. 8, Exhibit 4(f), at 2273–75.

**45.** *See infra* this section, distinguishing between "actual innocence of offense" and "actual innocence of the death penalty."

ing alone provides no basis for federal habeas relief. *Schlup,* 513 U.S. at 315, 115 S.Ct. 851.

Even if petitioner sufficiently alleged an underlying constitutional violation, this Court is unable to excuse petitioner's procedural default because he cannot satisfy the stringent standard for the miscarriage of justice exception, *i.e.* proof of actual innocence. The concept of "actual innocence" is not limited to innocence of an offense; it also includes a situation where a constitutional violation has probably resulted in the imposition of a death sentence upon one who is actually innocent of a death sentence. *Sawyer,* 505 U.S. at 340–47, 112 S.Ct. 2514. "[T]he 'actual innocence of the death penalty exception' can be invoked by showing by clear and convincing evidence that, but for the [constitutional] violation, the petitioner would not have been eligible for the death penalty because some constitutional or state statutory prerequisite for the imposition of a death sentence could not have been satisfied." James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 26.4 (3d ed.1998) (internal punctuation omitted); *Sawyer,* 505 U.S. at 336, 112 S.Ct. 2514. A petitioner may prevail under this standard, in essence an eligibility test, by demonstrating that no aggravating circumstance existed or that some other condition of eligibility for the death penalty was not met. *Lingar v. Bowersox,* 176 F.3d 453, 462 (8th Cir.1999). Additional mitigating evidence *does not* satisfy this standard. *Sawyer,* 505 U.S. at 345, 112 S.Ct. 2514; *Lingar,* 176 F.3d at 462. Therefore, under Supreme Court precedent, even if petitioner has newly discovered evidence, because the evidence relates only to mitigation, it cannot support federal habeas relief.

Therefore, for the reasons stated above, petitioner cannot obtain habeas relief on this claim, and additional medical testing would be inappropriate. Further, this Court finds that it is not appropriate to hold an evidentiary hearing on this claim. If the Court assumes petitioner is at fault for the failure to develop the factual basis of his claim in state court, and assumes that petitioner satisfies 28 U.S.C. § 2254(e)(2)(A)(ii) (facts could not have been previously discovered though the exercise of due diligence), petitioner has still failed to demonstrate by clear and convincing evidence that no reasonable factfinder would have found him guilty but for the alleged constitutional error, and thus an evidentiary hearing is prohibited.[46] Alternately, if this Court were to assume that petitioner is not at fault for the failure to develop the factual record, and excuse petitioner from the requirements of 28 U.S.C. § 2254(e)(2), the Court finds that an evidentiary hearing is unnecessary. At best, petitioner's evidence would conclusively demonstrate what this Court has already assumed for purposes of this Order: that the recent psychological and neurological testing of petitioner would in fact demonstrate that he suffers from organic brain abnormalities which could explain behavioral abnormalities. Providing petitioner an opportunity to prove that factual proposition would not change the legal outcome of his claim.

## G. Ground 14: Cumulative Effect of Errors

▮ In Ground 14, petitioner asserts that even if each individual error committed at his trial and sentencing is insufficient standing alone to warrant habeas relief, the cumulative effect of the errors should entitle him to habeas relief. Petitioner recognizes that the Eighth Circuit has rejected the notion of "cumulative error," but raises the issue before this Court to preserve it for further review. The

---

**46.** *See supra* this section, discussing prejudice.

Court notes that petitioner did not raise the issue of "cumulative error" in his state court proceedings. However, rather than engage in a lengthy analysis of procedural default, the Court will take its cue from respondent and address this claim in the most expedient fashion—on its merits. As petitioner recognizes, the Eighth Circuit has unequivocally held that "cumulative error does not call for habeas relief, as each habeas claim must stand and fall on its own." *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990); *Girtman v. Lockhart,* 942 F.2d 468 (8th Cir.1991); *Henderson v. Norris,* 118 F.3d 1283, 1288 (8th Cir.1997). Therefore, this Court must deny habeas relief on this ground. However this claim is resolved, this Court finds it unnecessary to conduct an evidentiary hearing because petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e)(2), and alternately this claim can be resolved solely as a matter of law.

## H. Ground 15: Ineffective Assistance of Counsel

In Ground 15, petitioner raises a claim of ineffective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance was deficient, *i.e.* counsel failed to exercise the customary skills and diligence of a reasonable attorney in similar situations, and that the deficiency prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and the court] must indulge a strong pre-

sumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

Petitioner asserts that counsel was constitutionally ineffective in six ways; the Court will address each allegation individually.

1. *Failure to Properly Object, Obtain a Ruling, and/or Otherwise Seek Remedial Measures Based Upon Repeated, Improper, Inflammatory Questioning and Argument*

In his first point concerning ineffectiveness of counsel, petitioner asserts that trial counsel was ineffective for failing to couch his repeated objections and motions for mistrial in terms of federal constitutional law. Petitioner specifically refers to those instances discussed in Ground 4 (Improper and Inflammatory Testimony of Mary Hussian), Ground 5 (False Evidence and or Argument), Ground 6 (Improper and Inflammatory Closing Arguments), and Ground 9 (Improper Argument and Questioning). Petitioner did not present this argument before the state court in his post-conviction proceedings under Rule 37 of the Arkansas Rules of Criminal Procedure, and thus respondent claims, correctly, that it is procedurally defaulted. "The procedural default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (internal quotations and citations omitted).

Petitioner states that he has "cause" to excuse his procedural default: that Arkansas's post-conviction review mechanism is so flawed, as demonstrated by the failure of Arkansas to qualify as an "opt-in" state under the AEDPA,[47] it offers an "[i]nade-

---

**47.** The AEDPA provides for expedited review

of federal habeas petitions in death penalty

quate corrective process for the hearing and determination of claims in violation of federal constitutional guarantees...." *Case v. Nebraska,* 381 U.S. 336, 337, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965) (per curiam). Although a state has no obligation to provide an avenue for state post-conviction relief, if a state chooses to do so, due process requires that the mechanism be fundamentally fair. *See Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Petitioner incorporates his previous pleading before this Court on the issue of Arkansas's "opt in" status.[48] In that pleading, as relevant here, petitioner argued that Arkansas did not qualify for "opt-in" status because: (1) Arkansas lacks an adequate mechanism for reasonable compensation of counsel in state post-conviction proceedings; (2) Arkansas lacks adequate standards to ensure competent, qualified attorneys are appointed because circuit judges retain the discretion to appoint attorneys with no capital post-conviction experience; and (3) Arkansas does not provide universal access to post-conviction counsel. Respondent withdrew its request for "opt in" status due to concerns over petitioner's first argument, reasonable compensation for post-conviction counsel.

▮ Whether or not Arkansas's post-conviction mechanism, or the manner in which Arkansas appoints and compensates counsel on post-conviction review, qualifies Arkansas as an "opt-in" state under the AEDPA has no bearing on the fairness of this petitioner's state post-conviction review. The "opt-in" provisions of the AED-

PA are exactly that: optional. Thus, there is no requirement that Arkansas comply with the structures of 28 U.S.C. § 2261 *et seq.* so long as Arkansas does not seek to take advantage of the statute's benefits. Petitioner's argument that the manner in which Arkansas appoints and compensates counsel on post-conviction review renders state post-conviction proceedings flawed, inadequate, and fundamentally unfair, must fail. No one, even an inmate under a death sentence, has a constitutional right to counsel in post-conviction proceedings. *Coleman,* 501 U.S. at 752, 111 S.Ct. 2546. Petitioner's apparent "ineffective assistance of post-conviction counsel" claim does not, therefore, provide cause for petitioner's failure to raise his argument that "trial counsel was ineffective for failing to couch his repeated objections and motions for mistrial in terms of federal constitutional law" before the state court. Petitioner's claim is procedurally defaulted, and this Court may not consider it. Further, because petitioner cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2), an evidentiary hearing on this claim is prohibited.

2. *Failure to Raise and Federalize Objections and Mistrial Motions*

In his second point concerning ineffectiveness of counsel, petitioner raises the same arguments he made in his first point, only here he addresses trial counsel's failure to raise *any* objection (as opposed to raising an objection but failing to "federalize" it) to potential Fifth, Sixth, Eighth, and Fourteenth Amendment violations. Just as petitioner's analysis of his second point is the same as his analysis of his first

---

cases provided the state which imposed the death penalty meets certain criteria, particularly ensuring the strong and uniform competency of counsel in state proceedings. *See* 28 U.S.C. § 2261 *et seq.* In this case, respondent acknowledged the possibility Arkansas had

not satisfied the required criteria, and thus withdrew its assertion that petitioner's habeas petition was governed by § 2261. *See* docket no. 22.

**48.** *See* docket no. 16.

point, this Court must apply the same analysis it applied to petitioner's first point to petitioner's second point. The Court will not, however, repeat that analysis here. For the same reasons stated in petitioner's first point under Ground 15, *supra*, the Court finds that petitioner's argument that trial counsel was ineffective for failing to raise objections to potential Fifth, Sixth, Eighth, and Fourteenth Amendment violations is procedurally defaulted, and this Court may not consider it. Further, because petitioner cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2), an evidentiary hearing on this claim is prohibited.

3. *Stating, in the Presence of the Jury, that Defense Counsel Had Advised Petitioner Against Taking the Stand and Testifying*

During the guilt phase of petitioner's trial, petitioner elected to testify in his own behalf, over his counsel's advice that he should not do so. In his third point concerning ineffectiveness of counsel, petitioner argues that trial counsel's opening colloquy constituted ineffective assistance of counsel by: (1) destroying petitioner's credibility before the jury; and (2) creating a conflict of interest between petitioner and his attorney in that petitioner wanted the jury to hear his testimony unblemished by any editorial remarks made by counsel, while petitioner's counsel was motivated by self-interest to disassociate himself from the legal strategy insisted on by petitioner.[49] Petitioner raised the credibility claim before the state courts, and it was decided

adversely to him on the merits. *See Noel,* 26 S.W.3d at 127. Petitioner did not raise the "conflict of interest" argument before the trial court in his state post-conviction proceedings, but rather first introduced the theory in his appellate brief, and thus, as respondent asserts, petitioner is procedurally barred from raising this aspect of his claim on federal habeas review.[50]

Because petitioner's credibility claim was adjudicated on the merits in state court, this Court must determine whether the Arkansas Supreme Court's decision on this point is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Petitioner's argument before the Arkansas Supreme Court was that because counsel informed the jury petitioner was testifying against counsel's advice, the jury could have concluded that even petitioner's own attorney did not believe he was telling the truth. *See Noel,* 26 S.W.3d at 127. The trial court found on post-conviction review that, through this line of questioning and by trial counsel's reference to it in closing argument, counsel was attempting to impress the jury with petitioner's sincerity, and that this was a matter of trial strategy. *Id.* Finding no clear error in this decision, the Arkansas Supreme Court held:

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel.

A. Yes, sir.
Q. Against my advice?
A. Yes, sir.

---

**49.** *See* docket no. 8, Exhibit 4(d), at 1798. After trial counsel elicited basic biographical information from petitioner, the following exchange occurred:

Q. Now, Riley, you're taking the stand here because you want to tell the jury your story. Isn't that correct?
A. Yes, sir.
Q. And that's over my advice?

**50.** *See* docket no. 12, Exhibit H, at 3; *id.,* Exhibit K, at 8; *id.,* Exhibit L, at 283–84. The Court notes that petitioner makes no argument to excuse his procedural default on this issue.

Thus, even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Id.* (internal citations omitted). The Arkansas Supreme Court did not apply a rule in direct contradiction to United States Supreme Court precedent—the statement of law above is entirely consistent with the *Strickland* standard for evaluating ineffective assistance of counsel. Petitioner cites no case where the United States Supreme Court reached a result opposite to the one here on materially indistinguishable facts, and this Court has found none. Finally, the state Court did not unreasonably apply the correct governing legal principles to the facts of petitioner's case. Trial counsel's closing argument makes his apparent strategy clear: after commenting on the credibility of Curtis Cochran, who testified for the state under a plea agreement with a significantly reduced sentence, and who admitted previously lying to the police about the events surrounding the murders, trial counsel argued:

> Ladies and gentlemen, you have the Defendant, who took the stand in his own behalf, against the advice of his own attorney, and told you in his own way that he was not involved on June 4th, 1995. He told you his own story. He told you without any kind of deal from the State, no lighter sentence. He got it up [sic], faced the music, and underwent a very grueling cross examination by the most experienced prosecutor on the prosecuting attorney's staff. . . . [Y]ou have somebody who gets on the stand, is willing to face the music, look you in the eye and tell you he didn't do that.[51]

Trial counsel confirmed his strategy during his testimony at petitioner's state post-

conviction proceedings.[52] Because the Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, this Court must not grant habeas relief on this point. Because this claim can be resolved on the record alone, the Court finds that it is not necessary to conduct an evidentiary hearing on this issue.

### 4. *Failing to Call Witnesses to Testify on Petitioner's Behalf*

■■ In his fourth point concerning ineffectiveness of counsel, petitioner argues trial counsel was ineffective for failing to call witnesses who could have testified that they were with petitioner in the days preceding the murders, petitioner's demeanor was not unusual, and petitioner was not acting like a person who was planning to commit a murder. Petitioner presented four of these witnesses at his state post-conviction hearing: Billy Murphy (petitioner's brother-in-law), Stacy Noel (petitioner's wife), Verna Morgan (petitioner's sister-in-law), and Linda Mayfield (petitioner's sister-in-law).[53] Because petitioner raised this claim before the state courts, and it was decided adversely to him on the merits, this Court now examines the Arkansas Supreme Court's ruling pursuant to 28 U.S.C. § 2254(d). *See Noel,* 26 S.W.3d at 127–28.

At petitioner's state post-conviction relief hearing, trial counsel testified that despite the defense team interviewing every potential witness petitioner named, he did not recall having knowledge of witnesses who could have testified to petitioner's demeanor during the days before the murders. *Noel,* 26 S.W.3d at 128. The trial

---

51. *See* docket no. 8, Exhibit 4(e), at 1903–04.

52. *See* docket no. 13, Exhibit J, at 99–100, 109.

53. *See* docket no. 13, Exhibit J, at 116–26.

court on post-conviction review found that "the admission of such demeanor testimony would not have altered the outcome of the trial and that, as a matter of law, the allegation [of ineffective assistance of counsel] was insufficient to warrant relief." *Id.* Agreeing, the Arkansas Supreme Court stated:

> Whether or not counsel had known about such testimony, the failure to present it does not render counsel's performance ineffective. The decision whether to call particular witnesses is a matter of trial strategy.... Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. When assessing counsel's decision not to call a particular witness, we must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. Noel has not shown that counsel was deficient for not calling these particular witnesses or that his defense was prejudiced by the absence of their testimony.

*Id.* (internal citations omitted).

It is apparent that the state court did not apply a rule in direct contradiction to Supreme Court precedent, which requires great deference to strategic choices of counsel. *See Strickland,* 466 U.S. at 675, 690–91, 104 S.Ct. 2052. Likewise, petitioner cites no case where the United States Supreme Court reached a result opposite to the one here on materially indistinguishable facts, and this Court has found none. Nor did the state court unreasonably apply the correct governing legal principles to petitioner's case or make an unreasonable

determination of facts. The state court apparently found credible trial counsel's assertion that he had made a thorough investigation of potential witnesses, and, based on the record, this determination was not unreasonable.[54] Further, even if these witnesses had testified as to petitioner's demeanor during the days leading up to the murder, this would not have changed the remainder of the evidence placing petitioner at the scene of the crime—including and especially Mary Hussian and Kyle Jones's eyewitness identification of petitioner, or the 911 tape of the incident in which someone is heard in the background calling "Dobi, Dobi, Dobi .... Dobi" (petitioner's nickname and, from the style of this case, apparent middle name).[55] Because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts, this Court must not grant habeas relief on this point. The Court finds that it is not necessary to conduct an evidentiary hearing on this issue as this claim can be resolved on the record alone.

5. *Failing to Request Funds for an Identification Expert*

■■■ In his fifth point concerning ineffectiveness of counsel, petitioner asserts trial counsel was ineffective for failing to request funds for an identification expert to challenge the credibility of Mary Hussian and Kyle Jones's eyewitness testimony. Stated another way, it appears petitioner asserts that trial counsel's impeachment of eyewitness testimony was inadequate. Because petitioner raised this claim before the state courts, and it

---

54. *See* docket no. 13, Exhibit J, at 104–05, 108.

55. *See* docket no. 8, Exhibit 4(d), at 1506, 1513–15, 1517–18, 1552–53, 1555–56, 1563; *id.,* Exhibit 4(f), at 2221–24.

was decided adversely to him on the merits, this Court now examines the Arkansas Supreme Court's ruling pursuant to 28 U.S.C. § 2254(d), *See Noel,* 26 S.W.3d at 128–29.

The Arkansas Supreme Court noted that Arkansas case law did not support the admissibility of such testimony as it is considered to be an invasion of the province of the jury. *See Noel,* 26 S.W.3d at 128. The Arkansas Supreme Court concluded trial counsel was not ineffective because "counsel cannot be found ineffective for failing to make an argument that has no merit or has been previously rejected by this court." *Id.* at 129.

In reviewing petitioner's claim, the state court did not apply a rule in direct contradiction to Supreme Court or reach a result opposite to a result reached by the Supreme Court on materially indistinguishable facts. As a basic principle, under *Strickland,* the presentation of testimonial evidence is a matter of trial strategy. *Strickland* requires counsel to exercise the customary skills and diligence of a reasonable attorney in a similar situation—in light of Arkansas's prohibition of identification expert testimony, it is not unreasonable that trial counsel did not pursue funds for an identification expert. Further, even if the State of Arkansas permitted this type of expert testimony, and petitioner had requested an expert, petitioner would not necessarily have been constitutionally entitled to one. *See generally Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Ake v. Oklahoma,* 470 U.S. 68, 76, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, this Court must not grant habeas relief on this point. Further, because this claim can be re-

solved on the record alone, an evidentiary hearing on this claim is unnecessary.

### 6. *Cumulative Effect of Counsel's Errors and Omissions*

In his sixth point concerning ineffectiveness of counsel, petitioner argues that the cumulative effect of trial counsel's errors and omissions in the guilt and penalty phases entitles him to habeas relief. For authority, petitioner refers this Court to Ground 14, stating he is entitled to relief under the cumulative error doctrine. Respondent asserts that this claim is procedurally barred due to petitioner's failure to raise it in state court. Petitioner asserts that the procedural default may be excused due to the inadequacy of Arkansas's post-conviction review mechanism, *See supra* Ground 15, first point. This Court has previously discussed why this argument cannot excuse petitioner's default, *see id.,* and will not repeat that discussion here. Petitioner's claim is procedurally defaulted, and this Court may not consider it. The Court further notes that even if it were to consider this claim on the merits, under the cumulative error doctrine cited by petitioner, petitioner cannot obtain relief. *See supra* Ground 14; *Girtman,* 942 F.2d at 475. However this claim is resolved, this Court finds it unnecessary to conduct an evidentiary hearing because petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e)(2), and alternately this claim can be resolved solely as a matter of law.

## IV. Discussion of Claims for Which Petitioner Does Not Request Evidentiary Hearing

### A. Ground 1: Mandatory Review of Entire Record by Arkansas Supreme Court

In Ground 1, petitioner asserts that the Arkansas Supreme Court's failure or refusal to conduct an automatic, mandatory

review of the *entire* record on direct appeal for the possibility of reversible error denied him his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Petitioner bases his claim on *State v. Robbins,* in which the Arkansas Supreme Court held that it is required to automatically review the record in death penalty cases for egregious and prejudicial errors, notwithstanding a competent defendant's independent right to waive his personal right to appeal. *State v. Robbins,* 339 Ark. 379, 5 S.W.3d 51, 55 (1999). In addition to alleging that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by the Arkansas Supreme Court's failure to conduct a *Robbins* review, petitioner asserts that the failure itself excuses petitioner's procedural default on other claims raised in his federal habeas petition.[56] In other words, petitioner argues that had the Arkansas Supreme Court conducted the automatic, mandatory, full review of the entire record it was constitutionally required to conduct, his current constitutional claims would have been at least implicitly preserved for federal habeas review. *See, e.g., Beam v. Paskett,* 3 F.3d 1301 (9th Cir.1993) (refusing to apply procedural default rules to claims not expressly raised on appeal but required to be reviewed by the state supreme court pursuant to the state's mandatory review statute because state supreme court implicitly rejected claims during the course of the mandatory review), *overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181 (9th Cir.1999); *but see Nave v. Delo,* 62 F.3d 1024 (8th Cir.1995) (Missouri's statute requiring mandatory review of capital cases does not require review for unspecified in-structional or constitutional error and thus does not preserve defaulted constitutional claims).

█ At the outset, this Court believes *Robbins* does not apply to petitioner. The Arkansas Supreme Court's *Robbins* decision was issued December 2, 1999, more than a year after petitioner's conviction became final. The *Robbins* opinion makes no mention of whether the decision should be applied retroactively or prospectively. However, this Court believes that the Arkansas Supreme Court would limit *Robbins* to a prospective application. In *Thomas v. State,* on a capital murder defendant's appeal of the trial court's denial of state post-conviction relief, the Arkansas Supreme Court overruled previous cases that held that "an allegation of ineffective assistance of counsel for failure to raise the issue of the sufficiency of the evidence in accordance with the prevailing rules of civil procedure cannot be grounds for [state post-conviction] relief." *Thomas v. State,* 322 Ark. 670, 911 S.W.2d 259, 260 (1995). The Arkansas Supreme Court indicated that the new rule making relief available on this ground would have a prospective application only. *Id.* The Arkansas Supreme Court did not make the new rule retroactively applicable to other capital murder defendants who, arguably, might have been prevented from raising a meritorious ineffective assistance of counsel claim under the old rule. *Thomas* is the most analogous case to the current situation this Court has found in its review of Arkansas case law, and the Court finds that, by analogy, *Thomas* supports the prospective-only application of *Robbins.* This Court also finds instructive the Ar-

---

**56.** This Court has reviewed petitioner's petition and identified four claims that petitioner asserts are not procedurally defaulted due to the state court's failure to conduct a *Robbins* review: Ground 2 (*ex post facto* /victim im-pact evidence); Ground 4 (improper and inflammatory testimony of Mary Hussian); Ground 6 (inflammatory closing argument); and Ground 9 (improper argument and questioning).

kansas Supreme Court's July 9, 2001 Amendment to Rule 10 of the Arkansas Rules of Appellate Procedure (Criminal). The Amendment to Rule 10, which implements the procedures and principles announced in *Robbins*, states "This rule shall be effective for all cases in which the death penalty is imposed on or after August 1, 2001."

 Even assuming petitioner should have received the type of review prescribed in *Robbins*, petitioner does not demonstrate how he was prejudiced for not having that review. In a *Robbins* review, the Arkansas Supreme Court examines the following: (1) whether, pursuant to Supreme Court Rule 4–3(h) and Arkansas Code Annotated § 16–91–113(a), there exists prejudicial error; [57] (2) whether there exist any errors which fall within the *Wicks* exception to Arkansas rule which prevents consideration of plain error; [58] and (3) whether "fundamental safeguards" that preserve the essential fairness of the process afforded the defendant were followed. *Robbins*, 5 S.W.3d at 55. The record in petitioner's case was already reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(h). *See Noel*, 960 S.W.2d at 447. Thus, petitioner lacks only the *Wicks* limited plain error review and the "fundamental safeguard" review. Petitioner does not identify any proposed *Wicks* errors, and, having reviewed the transcript, this Court does not find any. Petitioner also fails to demonstrate how he was denied any "fundamental safeguard" in his trial or sentencing. Thus, petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights could not have been violated by the Arkansas Supreme Court's failure to conduct a *Robbins* review.

This Court notes further that under *Robbins*, counsel is still responsible for abstracting the record and briefing the issues required to be reviewed under *Robbins*. *See Robbins*, 5 S.W.3d at 55–57; *State v. Robbins*, 340 Ark. 255, 9 S.W.3d 500 (2000) ("Next, we note that it was the intent of this court that the counsel appointed pursuant to our decision in *Robbins* would not serve as a representative of a party but rather would assist the court in

---

57. "When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant in accordance with Ark.Code Ann.Sec. 16–91–113(a). To make that review possible, the appellant must abstract all rulings adverse to him or her made by the trial court on all objections, motions and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling. The Attorney General will make certain and certify that all of those objections have been abstracted and will brief all points argued by the appellant and any other points that appear to involve prejudicial error." Ark.Sup. Ct.R. 4–3(h). Arkansas Code Annotated § 16–91–113(a), provides: "The Supreme Court need only review those matters briefed and argued by the appellant, except that, where either a sentence for life imprisonment or death has been imposed, the Supreme Court shall review all errors prejudicial to the rights of the appellant."

58. For the most part, Arkansas does not recognize plain error, *i.e.*, an error not brought to the attention of the trial court by objection but nonetheless affecting substantial rights of the defendant. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739, 753 (2001). The *Wicks* case set out the following exceptions to the rule in Arkansas that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court: (1) a trial court's failure to bring the jury's attention to a matter essential to its consideration of the death penalty; (2) error by the trial court of which the defense has no knowledge and therefore no opportunity to object; (3) a trial court's failure to intervene without objection and correct a serious error by admonition or declaring a mistrial; and (4) failure of the trial court to take notice of errors affecting the substantial rights in a ruling admitting or excluding evidence, even though there is no objection. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

its review.... [We hereby appoint counsel] to perform the mandatory review duties outlined in *Robbins* to assist this court in its review of the record. Specifically, appointed counsel shall abstract the record and assist the court in its determination (1) whether any errors raised in the trial court are prejudicial to the defendant ... (2) whether any plain errors covered by the exceptions outlined in *Wicks v. State* ... have occurred; and (3) whether other fundamental safeguards were followed."). A petitioner's federal constitutional claims are thus *not* implicitly considered by the state court under *Robbins* in a manner sufficient to preserve them for federal habeas review, and the Arkansas Supreme Court's failure to conduct a *Robbins* review does not establish "cause" and "prejudice" to excuse petitioner's procedural default of constitutional claims raised in his habeas petition.

 Apart from petitioner's *Robbins* claim, petitioner also faults the Arkansas Supreme Court for not conducting a "plain error" review and for "not reviewing the transcript for errors to which no objection was lodged," stating this is "tantamount to a less than full direct appellate review" as required by the United States Supreme Court.[59] As is apparent from the Court's discussion above, the "combing of the record" review sought by petitioner is in fact quite different from the review prescribed by *Robbins*. The United States Supreme Court has never required the automatic, mandatory, full, "plain error" review of the record in a death penalty case now requested by petitioner, and Arkansas law has never provided for such a review. *See Parker v. Dugger*, 498 U.S. 308, 321, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) (meaningful appellate review constitutionally required to ensure death penalty not imposed arbitrarily or irrationally); *Collins*

*v. State*, 261 Ark. 195, 548 S.W.2d 106, 121–22 (1977); Ark.Sup.Ct.R. 4–3(h); Ark. Code Ann. § 16–91–113(a); *see also generally Oxford v. Delo*, 59 F.3d 741, 746–741, (8th Cir.1995). Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights were therefore not violated by the Arkansas Supreme Court's failure to conduct this type of review.

**B. Ground 6: Improper and Inflammatory Closing Arguments**

In Ground 6, petitioner argues that the State's improper and inflammatory closing arguments in the guilt and penalty phases of his trial violated his rights under the Fifth, Eighth, and Fourteenth Amendments. In particular, petitioner faults the prosecution's statement "You wouldn't leave some monster out there on the street...." during its guilt phase closing argument, and the prosecution's characterization of petitioner as a "psychopath" during its penalty phase closing argument.[60]

Respondent asserts that these claims are procedurally defaulted because they were not presented to the state courts. As previously discussed in Ground 5, on direct appeal petitioner argued that the prosecutor's reference to "psychopath" shifted the burden of proof from the state to petitioner. The Arkansas Supreme Court recognized that counsel had objected to the term "psychopath," but, because the objection was unrelated to the burden of proof, found the claim was not preserved for appeal. *Noel*, 960 S.W.2d at 445. Petitioner admits that no objection was raised to the "monster" comment. It is thus apparent that petitioner's federal constitutional claim of improper and inflammatory closing arguments is procedurally defaulted unless petitioner can demonstrate "cause" and "prejudice." Petitioner states

---

**59.** *See* docket no. 30, at 5.

**60.** *See* docket no. 8, Exhibit 4(e) at 1914, Exhibit 4(f) at 2152–53.

that he can demonstrate "cause" to excuse his procedural default by: (1) the failure of the Arkansas Supreme Court to conduct a *Robbins* review on direct appeal, or (2) ineffective assistance of counsel.

This Court has already explained why the Arkansas Supreme Court's failure to conduct a *Robbins* review on direct appeal does not establish cause to excuse petitioner's procedural default, *see supra* Ground 1, and will not repeat that discussion here. This Court has also determined that petitioner cannot obtain relief on his ineffective assistance claim, *see supra* Ground 15. Because petitioner cannot excuse his procedural default, this Court cannot consider his improper and inflammatory closing arguments claim.

### C. Ground 7: Statutory Scheme Unconstitutionally Vague

In Ground 7, petitioner asserts that he was convicted and sentenced to death under a statutory scheme for murder that is unconstitutionally vague in violation of the Fifth, Eighth, and Fourteenth Amendments. Respondent points out that this issue was not presented in state court, but states that it is easier to resolve this claim on the merits. The Court thus takes its cue from respondent.

Petitioner asserts the Arkansas capital murder statute, Ark.Code Ann. § 5–10–101, is unconstitutional because it overlaps the statute addressing first degree murder, Ark.Code Ann. § 5–10–102. The Eighth Circuit explicitly considered and rejected this precise claim in *Simpson v. Lockhart*, 942 F.2d 493, 496–97 (8th Cir. 1991) (overlapping Arkansas capital felony murder and first degree felony murder statutes are not unconstitutionally vague). *See also Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225, 229 (2000) (no constitutional infirmity in overlapping capital murder and first degree murder statutes). This Court is bound by the decision of the Eighth Circuit, and thus must deny relief on this claim.

### D. Ground 9: Improper Argument and Questioning

In Ground 9, petitioner argues that the state's continuous and repeated pattern of improper argument and questioning of witnesses violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Specifically, petitioner faults respondent for "a pattern of either misconduct or reckless disregard for the rules of evidence by the State" demonstrated on 22 occasions including: asking leading questions, questions calling for hearsay responses, compound questions, questions calling for speculative responses, questions relating to irrelevant matters, questions that had been asked and answered, and presenting improper, inflammatory argument to the jury. Rules of evidence and trial procedure are usually matters of state law, and federal constitutional concerns are implicated only when error infringes on a specific constitutional protection. *Adail v. Wyrick*, 711 F.2d 99, 102 (8th Cir.1983). "[A]n erroneous state-court evidentiary ruling violates the Due Process Clause only if it is gloss, conspicuously prejudicial or of such import that the trial was fatally infected.... [A petitioner] must show a reasonable probability that the error affected the trial's outcome." *Richardson v. Bowersox*, 188 F.3d 973 (8th Cir.1999) (internal quotations and citations omitted).

Respondent argues that petitioner's claim of improper argument and questioning is procedurally defaulted. However, it is simpler for this Court to bypass the procedural default argument and address this claim on the merits. Respondent's argument in opposition in the alternative is that petitioner's claim is in fact a cumula-

tive error claim. The Court agrees that petitioner's argument is one of cumulative error, and, as previously addressed in Ground 14, this Court cannot grant habeas relief on a claim of cumulative error. *See* *supra* Ground 14; *Scott,* 915 F.2d at 1191; *Henderson,* 118 F.3d at 1288.

▮ Alternately, examining individually the trial court's actions in response to defense counsel's objections, which can only be done through a general review of the transcript as petitioner does not address each error individually or offer supporting authority as to how each trial court ruling was erroneous, the Court finds no constitutional violation. Even if the trial court's rulings or actions were in some way erroneous, and this Court does not believe they were, petitioner has not shown a reasonable probability that the alleged error affected the trial's outcome. On twelve occasions, the trial court sustained petitioner's objections.[61] On four occasions, the trial court did not rule on the objection or simply acknowledged the objection.[62] Only twice did the trial court overrule defense counsel's objections: to clinical photographs showing entry wounds on the victims, which the trial court found highly probative and not very prejudicial; and to the testimony of prosecution witness Kyle Jones, which defense counsel asserted was hearsay, but was obviously not hearsay as

it was not offered for the truth of the matter asserted.[63] Neither of these rulings were incorrect. *See* Ark.R.Evid. 403; *Cotton v. State,* 276 Ark. 282, 634 S.W.2d 127 (1982) (no error in presenting photograph showing wounds because nature, extent, and location of wounds were relevant to intent and state of mind of defendant); Ark.R.Evid. 801(c); *Owens v. State,* 318 Ark. 61, 883 S.W.2d 471 (1994) (statement not hearsay when offered not for truth of matter asserted but merely to show the fact of the assertion).

Whether petitioner's claim is considered cumulatively or individually, petitioner is not entitled to habeas relief on this claim.

## V. Conclusion

THEREFORE, petitioner's amended petition for writ of habeas corpus [docket no. 30] is hereby DENIED in its entirety.

FURTHER, for the reasons stated in this Order, respondent's motion to preclude petitioner from calling witnesses prior to compliance with 28 U.S.C. § 2254 [docket no. 38] is hereby GRANTED.[64]

FURTHER, petitioner's motion for reconsideration [docket no. 65] of the Court's January 28, 2002 Order [docket no. 64] is hereby DENIED.

FURTHER, this Order is hereby SUBSTITUTED in place of the Court's Janu-

---

61. *See* docket no. 8, Exhibit 4(d), at 1611, 1614–16, 1663, 1667–75, 1694–96, 1758–59, 1816, 1818–19; *id.,* Exhibit 4(e), at 1832, 1833, 1841–46, 1917–19.

62. *See* docket no. 8, Exhibit 4(d), at 1505, 1617–18, 1726, 1755.

63. *See* docket no. 8, Exhibit 4(d), at 1507, 1744–46; *id.,* Exhibit 4(f), at 2245–46 (photographs in question).

64. In an Order [docket no. 71] entered February 19, 2002, the Court granted this motion summarily in order to save the parties any expense and time in preparation for the previ-

ously scheduled evidentiary hearing. As stated in that Order, the Court now issues this Order explaining in depth the basis of that Order. On an unrelated matter, it appears in petitioner's February 15, 2002 pleading entitled "Summary of Pending Issues and Notice of Matters to be Addressed by Appointed Counsel at the Evidentiary Hearing" [docket no. 70] that petitioner may be dropping his request for an evidentiary hearing on Ground 3 (Change of Venue), Ground 5 (False Evidence and/or Argument), and 14 (Cumulative Effect of Errors). The Court continues to address petitioner's request for an evidentiary hearing on those issues, however, out of an abundance of caution.

ary 28, 2002 Order [docket no. 64] as to Ground 10 of petitioner's amended petition for writ of habeas corpus, with the same result attaining, including the denial of petitioner's motion for additional medical testing [docket no. 61].

## JUDGMENT

In accordance with the Court's Order entered this date, judgment is hereby entered dismissing petitioner's amended petition for writ of habeas corpus; the requested relief is denied.

## CERTIFICATE OF APPEALABILITY AND ORDER AMENDING AND SUPPLEMENTING THE MARCH 1, 2002 MEMORANDUM OPINION AND ORDER

Petitioner Riley Dobi Noel seeks a certificate of appealability [docket nos. 75, 76] from this Court's March 1, 2002[1] Memorandum Opinion and Order [docket no. 73] denying petitioner's amended petition for writ of habeas corpus under 28 U.S.C. § 2254 [docket no. 30]. Specifically, Noel seeks a certificate of appealability as to the following claims: Ground 1 (Mandatory Review of Entire Record by Arkansas Supreme Court), Ground 2 (Victim Impact Evidence), Ground 8 (Newly Discovered Evidence—recantation of victim impact testimony), Ground 10 (Newly Discovered Evidence—brain abnormalities), and Ground 15 (Ineffective Assistance of Counsel—counsel's statement before jury regarding petitioner's decision to testify). After careful consideration, and for the reasons stated below, the Court finds the certificate should issue as to Grounds 1, 8, 10, and 15, and should not issue as to Ground 2. The Court also finds that the discussion of petitioner's third claim under Ground 2 (Victim Impact Evidence—*ex*

post facto constitutional prohibition) appearing in the Court's March 1, 2002 Memorandum Opinion and Order should be amended and supplemented as reflected below.

### I. Standard of Review

This Court's March 1, 2002 Memorandum Opinion and Order denying petitioner's habeas corpus petition is subject to review, on appeal, by the Court of Appeals for the Eighth Circuit. 28 U.S.C. § 2253(a). Section 2253 also provides in relevant part, however, that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). This Court may issue a certificate of appealability on petitioner's claims only if petitioner has made a "substantial showing of the denial of a constitutional right," which has been described as a "modest standard." *Randolph v. Kemna*, 276 F.3d 401, 403 n. 1 (8th Cir.2002) (quoting *Charles v. Hickman*, 228 F.3d 981, 982 n. 1 (9th Cir.2000)); 28 U.S.C. § 2253(c)(2).

The Supreme Court has interpreted the "substantial showing" requirement of § 2253(c) as follows:

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.... When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim,

---

1. Although signed on February 28, 2002, the Order was not entered by the Clerk until March 1, 2002.

a [certificate of appealability] should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Further, if a petitioner satisfies the "substantial showing" standard, whether for claims denied on the merits or claims denied on procedural grounds, the certificate of appealability must specify which of petitioner's claims have met the test. 28 U.S.C. § 2253(c)(3).

## II. Discussion

### A. Ground 1: Mandatory Review of Entire Record by Arkansas Supreme Court

 In Ground 1, petitioner argued that the Arkansas Supreme Court's failure or refusal to conduct an automatic, mandatory review of the entire record on direct appeal for the possibility of reversible error denied him his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Petitioner based his claim in part on *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51, 55 (1999), in which the Arkansas Supreme Court held that it is required to automatically review the record in death penalty cases for egregious and prejudicial errors, notwithstanding a competent defendant's independent right to waive his personal right to appeal.[2] Petitioner also asserted, in an attempt to excuse his procedural default of other claims raised in his habeas petition, that had the

Arkansas Supreme Court conducted the review petitioner believes that court is constitutionally required to conduct, the other constitutional claims would have been at least implicitly preserved for federal habeas review.

This Court rejected petitioner's claims, finding that although the *Robbins* opinion makes no mention of whether the decision should be applied retroactively or prospectively, the Arkansas Supreme Court would likely limit *Robbins* to a prospective application. This Court further found that, even under a *Robbins* review, a petitioner's federal constitutional claims are not implicitly considered in a manner sufficient to preserve them for federal habeas review. Finally, this Court determined that the type of "combing of the record" review sought by petitioner, even apart from *Robbins*, is not constitutionally required in petitioner's circumstances.

Because this Court rejected Ground 1 on the merits, in order for a certificate of appealability to issue, petitioner must demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. Because of the uncertainty about and paucity of relevant precedent concerning the application of *Robbins* (*e.g.*, whether it applies prospectively or retrospectively, whether it applies in petitioner's circumstances, the extent or method of the review required to be conducted, whether such a review would implicitly preserve constitutional claims) this Court believes a certificate of appealability should issue as to Ground 1.

### B. Ground 2: Victim Impact Evidence

In Ground 2, petitioner asserted that the introduction of victim impact testimony by

---

**2.** In this case the Arkansas Supreme Court found that, although petitioner filed a *pro se* motion to "stop at once" his appeal, petitioner was not in fact attempting to waive his personal right to appeal. *See Noel v. State,*

No. CR 97–117, 1997 WL 343641 (Ark. Jun.16, 1997). Petitioner asserts that regardless, *Robbins* applies in all death penalty cases.

Mary Hussian during the penalty phase of his trial violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution because: (1) Arkansas Code Annotated § 5–4–602(4) ("Victim Impact Statute"), which permits the presentation of victim impact evidence, creates a new aggravator outside the state statutory scheme of aggravators set forth in Arkansas Code Annotated § 5–4–604; (2) the presentation of victim impact evidence constitutes a departure from the normal statutory sentencing scheme in which aggravating and mitigating factors are weighed, and permits the jury to impose death for an impermissible reason such as sympathy or indignation, thus failing to serve the narrowing function mandated by the Eighth Amendment; (3) petitioner's crime was committed prior to the enactment of the Victim Impact Statute, and the retroactive application of that statute to petitioner violates the *ex post facto* constitutional prohibition; and (4) victim impact evidence is irrelevant to the aggravating or mitigating circumstances raised by the parties. This Court rejected all four of these claims, and now rejects petitioner's request for a certificate of appealability on these claims, for the following reasons.

 As to the first claim, based on the Arkansas Supreme Court's explicit statement on the issue as well as its own review of the issue, the Court determined that the Arkansas legislature did not intend to create a new aggravating circumstance by enacting the Victim Impact Statute.[3] Concerning petitioner's argument that, if not by intent, then by effect the Victim Impact Statement permits juries to consider a *de*

*facto* aggravator not included in the statutory list of aggravating circumstances, this Court concluded that the Arkansas legislature's provision for the presentation of victim impact evidence simply gave effect to what is constitutionally permissible under *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Finally, this Court found that, as a general matter, the mere fact that the legislature has provided for the presentation of victim impact evidence does not mean that the victim impact evidence will be so unduly prejudicial as to render the trial fundamentally unfair and violate due process.

Petitioner asserts that reasonable jurists would find this Court's assessment of this issue debatable. This Court disagrees, particularly in light of the holding in *Payne.* Accordingly, this Court will not grant a certificate of appealability on petitioner's first claim.

 As to petitioner's second claim, the Court denied relief because, as stated by the United States Supreme Court, "the Eighth Amendment erects no *per se* bar" to the admission of victim impact evidence. *Payne,* 501 U.S. at 827, 111 S.Ct. 2597. This Court also held that aggravating circumstances give effect to Eighth Amendment protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. *See generally Tuilaepa v. California,* 512 U.S. 967, 979–80, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Again, petitioner asserts that reasonable jurists would find this Court's assessment of this issue debatable. In light of *Payne* and *Tuilaepa,* this Court disagrees, and

---

**3.** To the extent petitioner relies on Ark.Code Ann. § 5–4–604 (which provides "Aggravating circumstances shall be limited to the following ...") as the reason a jury should not be permitted to consider "matters [such as victim impact evidence] outside the statute that specifically specifies what constitutes aggra-

vation," this Court notes that Section 5 of Act *1089* ("An Act to Amend Ark.Code Ann. § 5–4–602(4) to Authorize the Admission of Victim Impact Evidence; and for Other Purposes") provided: "All laws and parts of laws in conflict with this act are hereby repealed."

will not grant a certificate of appealability on petitioner's second claim.

In his third claim, petitioner argued that the Victim Impact Statute is unconstitutional as applied to him under the *ex post facto* clause of the United States Constitution because it permits the introduction of "victim impact" evidence retroactively in death cases where the crime was committed prior to the enactment of the statute. The parties and the Court addressed whether this issue was procedurally defaulted and whether, substantively, petitioner could obtain relief.[4] Substantively, this Court determined that petitioner had not stated an *ex post facto* violation because the decision to permit victim impact evidence at sentencing was a procedural matter. Regrettably, in evaluating this claim the parties and the Court focused on the effect of and distinction between a substantive change in the law and a procedural change in the law. The parties did not raise, and the Court did not examine the claim in the context of, the most fundamental aspect of an *ex post facto* claim—that "[a] law violates the *ex post facto* constitutional prohibition if it applies to events occurring *before* its en-

actment ...." *Burr v. Snider,* 234 F.3d 1052, 1054 (8th Cir.2000) (emphasis supplied) (citing *Collins v. Youngblood,* 497 U.S. 37, 50, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). There is no dispute that the crime in this case was committed on the evening of June 4, 1995. It was the 1993 amendment to Ark.Code Ann. § 5–4–602, however, that provided for the introduction of victim impact evidence in the wake of *Payne. See* 1993 Ark. Acts 1089; *codified at* Ark.Code Ann. § 5–4–602(4) (Repl. 1997).[5] Obviously, then, the pertinent section of the statute was enacted over two years before petitioner committed his crime, and the Victim Impact Statute cannot be unconstitutional as applied to petitioner under the *ex post facto* clause of the United States Constitution. *See id.; see also* Ark.Code Ann. § 5–4–602 (History, Publisher's Notes, & Amendments); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677, 689 (1995) (stating: "We hold that permitting this [victim impact] testimony under Act 1089 did not constitute an *ex post facto* law[,]" where crime was committed March 16, 1993.). Clearly, whatever this Court's reasoning in its March 1, 2002 Memorandum Opinion and Order denying

---

4. *See* Petitioner's Amended Petition for Writ of Habeas Corpus [docket no. 30] at page 8 ("The 'victim impact' statute is also unconstitutional as applied to Noel under the *Ex Post Facto* clause of U.S. Const. Art. 1 Section 10 because it permits the introduction of 'victim impact' evidence retroactively in death cases where, as here, the crime was committed prior to the enactment of the statute."); Respondent's Response to Amended Petition for Writ of Habeas Corpus [docket no. 39] at page 26 ("Furthermore, even though Ark. Code Ann. § 5–4–602(4) was amended to permit victim-impact evidence after Noel committed his crime, that change does not violate the prohibition against the *ex post facto* clause."); March 1, 2002 Memorandum Opinion and Order [docket no. 73] at page 16.

5. Section 1 of Act 1089 amended subsection (4) of Ark.Code Ann. § 5–4–602. Section 2 of

Act 1089 stated: "It is the express intention of this act to permit the prosecution to introduce victim impact evidence as permitted by the United States Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)." Section 6 of Act 1089 stated: "Emergency. It is hereby found and determined by the General Assembly that it is necessary to authorize the admission of victim impact evidence at the penalty phase of capital murder trials and that immediate passage of this act is necessary to protect the public peace, health and safety of the state of Arkansas. Therefore, an emergency is hereby declared to exist, and this act being immediately necessary for the preservation of the public peace, health, and safety shall be in full force and effect from and after its passage and approval." Act 1089 was approved on April 13, 1993. *See* 1993 Ark. Acts 1089.

petitioner's amended petition for writ of habeas corpus on this claim, reasonable jurists could not find this Court's temporal/sequential analysis of the *ex post facto* claim, as outlined above, debatable or wrong. The application for certificate of appealability as to the third issue is denied. Further, the Court's March 1, 2002 Memorandum Opinion and Order is hereby amended and supplemented, such that the Court denies relief on petitioner's *ex post facto* claim for the reasons stated herein.

■ As to petitioner's fourth issue concerning whether the victim impact evidence was relevant to the particular aggravating or mitigating circumstances raised by the parties, the Court denied relief on substantive grounds. Petitioner relies on Arkansas Supreme Court Justice Newbern's opinion concurring in part and dissenting in part in his case, in which Justices Imber and Thorton joined, as evidence that reasonable jurists would find this Court's assessment of the issue debatable or wrong. *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231, 242 (1997) (Newbern, J., concurring in part and dissenting in part). The issue, as presented by petitioner on habeas, is a *constitutional* one under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Justice Newbern's analysis that Mary Hussian's testimony was not relevant to the aggravating and mitigating circumstances in petitioner's case relied on Arkansas *statutory* construction—specifically, Justice Newbern's interpretation of Ark.Code Ann. § 5–4–603 and that statute's limiting effect on the Victim Impact Statute. Petitioner also relies on a Georgia Supreme Court case and a Florida Supreme Court case as evidence that reasonable jurists would find this Court's assessment of the issue debatable or wrong, but these cases lend little support to peti-

tioner's argument, particularly in light of the United States Supreme Court's holding that victim impact evidence is relevant evidence which informs the jury the toll the murder has taken on the victim's family. *Payne*, 501 U.S. at 827, 111 S.Ct. 2597. Further, the Arkansas Supreme Court noted in petitioner's direct appeal that Mary Hussian's testimony as to the impact of the loss of her children offset the mitigation testimony of Noel's mother concerning her son. *Noel*, 960 S.W.2d at 446. Because this Court finds that, in light of *Payne*, reasonable jurists would not find this Court's analysis of petitioner's fourth issue debatable or wrong, this Court must deny petitioner's request for a certificate of appealability on this issue.

### C. Ground 8: Newly Discovered Evidence—recantation of victim impact testimony

■ In Ground 8, petitioner argued that he was entitled to penalty phase relief under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution due to Mary Hussian's recantation of her victim impact testimony, or alternately, that Mary Hussian's newfound opposition to the death penalty constituted newly discovered evidence. This Court found that Mary Hussian's change of heart concerning the death penalty did not amount to a recantation of her victim impact testimony, and that even if it were a recantation or newly discovered evidence, it would not probably change the result of the penalty phase. Because this Court itself found it debatable whether Mary Hussian had in fact "recanted" her testimony, and because it is possible a reasonable jurist would find debatable this Court's assessment of the effect of Mary Hussian's testimony on the result of the penalty phase, this Court believes it appropriate to certify this issue for appeal.[6]

---

**6.** The Court questioned whether petitioner had in fact stated a constitutional violation in

this claim, but considered the claim and now certifies it out of an abundance of caution.

## D. Ground 10: Newly Discovered Evidence—brain abnormalities

 In Ground 10, petitioner argued he was entitled to penalty phase relief under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on newly discovered mitigating evidence that he suffers from brain abnormalities which explain behavioral abnormalities. Both parties agreed this claim was procedurally defaulted, but petitioner argued he could show cause and prejudice sufficient to excuse that procedural default. After careful examination, and finding no other case where a petitioner had taken this "cause and prejudice" approach in a similar situation, this Court determined that petitioner's claim would be more appropriately analyzed pursuant to the miscarriage of justice exception to procedural default, and found that petitioner had not satisfied either the cause and prejudice or the miscarriage of justice standard.[7]

In order to obtain a certificate of appealability on this issue, petitioner must demonstrate that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Petition-er's claim of newly discovered evidence of brain abnormalities, even as petitioner revised and refined the claim's legal theory over the course of litigation, followed a novel structure and presented complicated issues of law. The Court itself debated the appropriate analysis to utilize in determining whether petitioner could excuse his procedural default, and it is possible reasonable jurists would find both this Court's choice of analyses and results thereunder, and this Court's conclusions regarding the unusually structured constitutional claim, debatable. Accordingly, this Court believes it appropriate to certify this issue for appeal.

## E. Ground 15: Ineffective Assistance of Counsel

 In Ground 15, petitioner asserted that counsel was constitutionally ineffective under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in six ways. This Court denied relief on all six, and petitioner seeks a certificate of appealability on only one of those claims: that trial counsel was constitutionally ineffective for stating, in the presence of the jury, that he had advised petitioner against testifying. Petitioner alleged this destroyed his (petitioner's) credibility before the jury because the jury

---

See, e.g., Kinder v. Bowersox, 272 F.3d 532, 538 n. 5 (8th Cir.2001).

7. Petitioner erroneously states, as evidence that reasonable jurists could find the Court's decision on this issue debatable, the following: "Originally, this Court rejected Noel's brain damage claim for the stated reason that it was procedurally defaulted, since 'cause' [and 'prejudice'] did not exist. Now, the Court takes the position that this particular claim 'should properly be analyzed under the "miscarriage of justice" exception to the procedural default doctrine.' This significant circumstance is, in itself, sufficient to establish that reasonable jurists could differ on this particular point, since this Court did so it-self." See Petitioner's Application for Certificate of Appealability [docket no. 75] at page 24–25. In fact, in the Order to which petitioner refers (the Court's January 28, 2002 Order [docket no. 64] initially addressing petitioner's Ground 10, now vacated with this Court's comprehensive March 1, 2002 Order substituted in its place), this Court also stated that petitioner's claim should be analyzed under the miscarriage of justice exception. See January 28, 2002 Order [docket no. 64] at page 5. Although petitioner's assertion of inconsistency must fail, the underlying idea, that it is debatable under which exception petitioner's claim should be evaluated, is legitimate.

could have concluded that even petitioner's own attorney did not believe he was telling the truth. It is possible reasonable jurists would differ on the question of whether petitioner's trial counsel was ineffective in this circumstance; thus, the Court will grant the certificate of appealability on this issue.

### III. Conclusion

THEREFORE, petitioner's application for a certificate of appealability [docket nos. 75, 76] from this Court's March 1, 2002 Memorandum Opinion and Order [docket no. 73] denying petitioner's amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 is hereby GRANTED IN PART AND DENIED IN PART. Specifically, this Court grants the certificate of appealability as to the following claims only: Ground 1 (Mandatory Review of Entire Record by Arkansas Supreme Court), Ground 8 (Newly Discovered Evidence—recantation of victim impact testimony), Ground 10 (Newly Discovered Evidence—brain abnormalities), and Ground 15 (Ineffective Assistance of Counsel—counsel's statement before jury regarding petitioner's decision to testify). The Court rejects petitioner's request for a certificate of appealability as to Ground 2 (Victim Impact Evidence).

Further, the Court's March 1, 2002 Memorandum Opinion and Order is hereby amended and supplemented, such that the Court denies relief on petitioner's *ex post facto* claim for the reasons stated herein.